**CRTF CORPORATION, Plaintiff,**

v.

**FEDERATED DEPARTMENT STORES, et al., Defendants.**

**Civ. No. C-1-88-114.**

United States District Court, S.D. Ohio, W.D.

Feb. 5, 1988.

### ORDER DENYING PRELIMINARY INJUNCTION

**CARL B. RUBIN, Chief Judge.**

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction (Doc. 2) and upon argument and memoranda presented to the Court. Under Civil No. C-2-88-121 this case was originally filed in the United States District Court for the Southern District of Ohio, Eastern Division. By Order of The Honorable James L. Graham it was consolidated with Civil No. C-2-88-118 entitled *Federated Department Stores, Inc. v. CRTF Corporation,* and transferred to the undersigned. Subsequently case no. C-2-88-118 was dismissed by the Plaintiffs.

The issue for consideration is the asserted unconstitutionality of a portion of Ohio Revised Code § 1707.041. Pursuant to Rule 52, Fed.R.Civ.P., the Court does set forth herewith its Findings of Fact, Opinion and Conclusions of Law.

### I.

### FINDINGS OF FACT

1. Plaintiff CRTF, a New York corporation, has made a nationwide tender offer for stock of Defendant Federated Department Stores, Inc., a Delaware Corporation, with substantial assets in the State of Ohio.

Pursuant to definitions used in Ohio Revised Code § 1707.041 the tender offer of Plaintiff is a "takeover bid" as defined in

Ohio Revised Code § 1707.041(A)(1). Plaintiff is an "offeror" as defined in § 1707.041(A)(2).

Defendant Federated Department Stores, Inc. is a "target company" whose securities are or are about to be the subject of a takeover bid as defined in Ohio Revised Code § 1707.041(A)(4).

In accordance with the foregoing the requirements of § 1707.041 became applicable to such tender offer.

2. In pertinent portion Ohio Revised Code § 1707.041 provides in part as follows:

> ... (B)(1) No offeror shall make a takeover bid unless [1] at least twenty days prior thereto he announces publicly the terms of the proposed takeover bid and [2] files with the division of securities and the target company copies of all information required by Division (B)(3) of this section and either: (a) Within ten days following such filing no hearing is ordered by the Division or requested by the target company; (b) a hearing is requested by the target company within such time, but the Division finds that no cause for hearing exists; (c) a hearing is ordered within such time and upon such hearing the Division adjudicates that the offeror proposes to make fair, full and effective disclosure to offerees of all information material to a decision to accept or reject the offer.

3. The above quoted portion of § 1707.041 has been declared unconstitutional in part. That portion of subsection (B)(1) dealing with a twenty day period of public announcement and identified herein as [1] was held unconstitutional by the United States District Court for the Southern District of Ohio in *Canadian Pacific Enterprises, Inc. v. Kenneth E. Krouse. See* 506 F.Supp. 1192 (S.D.Ohio 1981). That portion of subsection (B)(1) identified herein as [2] that has not been declared unconstitutional is as follows: "No offeror shall make a takeover bid unless [it] files with the division of securities and the target company copies of all information required by Division (B)(3) of this section...."

4. The issue before this Court concerns itself only with the hearing provisions. On January 26, 1988 Defendant Federated Department Stores, Inc. sought a hearing as provided in § 1707.041(B)(1)(b). On February 1, 1988 Federated Department Stores withdrew its request for a hearing. On February 1, 1988 the division of securities issued an order indicating that it was unable to find cause for a hearing pursuant to § 1707.041 (State of Ohio Ex. A).

5. Ohio Revised Code § 1701.831 entitled "The Ohio Control Share Acquisition Act" and likewise dealing with tender offers was held unconstitutional by the United States District Court for the Southern District of Ohio in *Fleet Aerospace Corporation v. Holderman,* 637 F.Supp. 742 (S.D.Ohio 1986). That determination was affirmed by the United States Court of Appeals for the Sixth Circuit in 796 F.2d 135 (6th Cir.1986). Specifically excepted from that holding were considerations of § 1707.041 and § 1707.042.

## II.

### OPINION

The issue before the Court confronts the problem of the constitutionality of an act of the General Assembly of Ohio dealing with a filing requirement with the division of securities and a right of hearing thereon. State "anti-takeover statutes" have been the subject of extensive litigation and will undoubtedly continue to be so. At this time the controlling determination of the Supreme Court of the United States appears to be *Edgar v. MITE Corporation,* 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982). The *MITE* decision is sufficiently complicated that both sides in oral argument found aid and comfort therein.

A careful and detailed "parsing" of the *MITE* decision is necessary before it may be determined what is and is not the controlling law of the United States. The *MITE* opinion is divided into five sections, each identified by a Roman numeral. In addition, Section IV is further subdivided by subsections A, B and C and Section V is divided into subsections A and B.

Section I sets forth the factual background of the litigation. It has the concurrence of six Justices. Worthy of note is a factual statement that: "The Secretary [of State of Illinois] may call a hearing at any time during the twenty day waiting period *to adjudicate the substantive fairness of the offer.* (Emphasis added). *Supra* at 627, 102 S.Ct. at 2633.

Section II holds that the matter is not moot. Five Justices concurred in that finding.

Section III addresses the question of unconstitutionality under the Supremacy Clause and the relation of the Williams Act, 15 U.S.C. §§ 78m(d)–(e); 78n(a)–(f), thereto. Only three Justices agreed that the Illinois Act was unconstitutional under the Supremacy Clause.

Worthy of note, however, is the comment in Section III which appears on page 631, 102 S.Ct. at 2635: "Thus Congress did not explicitly prohibit states from regulating takeovers; it left the determination whether the Illinois statute conflicts with the Williams Act to the courts."

Section IV concerned itself with three separate provisions of the Illinois Act. Subsection A discussed a requirement that a tender offeror notify the Secretary of State and the target company of the intent to make a tender offer and the material terms of the offer twenty business days before the offer became effective. Subsection B dealt with hearing provisions which allowed the Secretary of State to call a hearing with respect to any tender offer subject to the Act and to halt the offer until the hearing was completed. Subsection C considered the preemption of the Williams Act since the Illinois Act permitted the Secretary of State to pass on the substantive fairness of the tender offer. Only three Justices concurred with Section IV.

Section V examined the Illinois Act in accordance with the "Commerce Clause."[1] In Section V the majority declared that: "A state statute must be upheld if it 'regulates evenhandedly to effectuate a legitimate lo-

cal public interest and its effect on interstate commerce are only incidental ... unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.' " *Supra* at 640, 102 S.Ct. at 2639 *citing Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

Subsection A of Section V considered the Illinois Act in terms of the authority of states to enact "blue sky" laws. Subsection A contains the following language: "This Court has upheld the authority of states to enact 'Blue Sky' laws against the Commerce Clause challenges on several occasions." (citations omitted) *supra* at 641, 102 S.Ct. at 2640). The conclusion of subsection A is as follows: "Because the Illinois Act purports to regulate directly and to interdict interstate commerce, including commerce wholly outside the state, it must be held invalid...." *Supra* at 643, 102 S.Ct. at 2641.

Subsection B considered the question of excessive burdens versus local interests. The Court held that such burden must not be excessive. The conclusion reached was as follows: "The most obvious burden the Illinois Act imposes on interstate commerce arises from the statute's previously described nationwide reach which purports to give Illinois the power to determine whether a tender offer may proceed anywhere. The effects of allowing the Illinois Secretary of State to block an nationwide tender offer are substantial." *Supra* at 643, 102 S.Ct. at 2641.

The ultimate conclusion reached by the Supreme Court was that the burden on interstate commerce outweighed the putative local benefits and that it was accordingly invalid under the Commerce Clause. Subsection V(A) constituted the opinion of four Justices while Subsection V(B) had the concurrence of five Justices. Only Sections I, II and V(B) were conclusions supported by a majority of Justices.

The foregoing analysis therefore requires the ultimate conclusion that the por-

---

**1.** "Congress shall have the power ... to regulate *commerce* ... among the several states." Article I, Section 8, Clause 3, United States Constitution.

tion of the Ohio statute under consideration must be considered in terms of whether or not the burden imposed upon commerce is excessive in relation to the local interest served by the state. That alone constitutes the opinion of a majority of the Justices of the Supreme Court and is accordingly binding upon this Court. Of note, however, in this connection is the opinion of Justice Powell who constitutes one of the five Justices concurring in Section V(B). His opinion is instructive herein since it includes the following language:

"I join part V(B) because its Commerce Clause reasoning *leaves some room for state regulation of tender offers*. This period in our history is marked by conglomerate corporate formations essentially unrestricted by the antitrust laws.... Inevitably there are certain adverse consequences in terms of general public interest when corporate headquarters are moved away from a city and state." * (emphasis added)

* The corporate headquarters of the great national and multinational corporations tend to be located in the large cities of a few States. When corporate headquarters are transferred out of a city and State into one of these metropolitan centers, the State and locality from which the transfer is made inevitably suffer significantly. Management personnel—many of whom have provided community leadership—may move to the new corporate headquarters. Contributions to cultural, charitable and educational life—both in terms of leadership and financial support—also tend to diminish when there is a move of corporate headquarters.

457 U.S. at 646, 102 S.Ct. at 2642–43.

The *MITE* case therefore is not only instructive as to the inquiry to be made, but it is also authority for the proposition that the Williams Act does not constitute a *per se* preemption of all state anti-takeover statutes.

In terms of the Ohio Takeover Statute a footnote in the opinion by The Honorable Harry Wellford, Judge of the United States Court of Appeals for the Sixth Circuit in *Fleet Aerospace* is likewise instructive. Footnote 5 on page 139 contains the following: "We have reservations, however, about the district court's conclusionary statement that *MITE Corp.* 'sounded the

death knell for state control of federally regulated tender offers,' if the court meant by this statement that *all* state regulation regarding tender offers is foreclosed." (Emphasis in original). 796 F.2d at 139 n. 5.

There are specific limitations upon this Court's inquiry which may be summarized as follows:

*First,* this is a motion for a preliminary injunction and not an inquiry on the merits; *Second,* state anti-takeover statutes are not per se unconstitutional; *Third,* it is not the mission of the federal courts to search out and destroy state statutes which might under certain circumstances be unconstitutional in their application; *Fourth,* deference should be accorded all state legislatures in the passage of state laws and the presumption indulged that they are constitutional unless proved otherwise.

At the outset it should be noted that there is literally nothing for the Court to enjoin. CRTF has already filed information with the division of securities as set forth in subsection (B)(1). The division of securities has determined that there is no hearing necessary. Since the statute at most deals with the fairness of information disclosed to shareholders as distinguished from the fairness of the offer, there will be no delay in this case and the tender offer proceedings may go forward without any impediment from this statute. The motion seeks only an advisory opinion in a situation where the Court's decision either way will not affect this tender offer but will consider only the abstraction of whether or not under some circumstances Ohio Revised Code § 1704.041 might create a barrier prohibited by the Williams Act and the *MITE* decision.

To the question, "May a state constitutionally inquire into the fairness of an interstate takeover?", *MITE* answers "No."

To the question, "May a state constitutionally delay excessively a tender offer?", *Canadian Pacific Enterprises* answers "No."

To the question, "May a state constitutionally inquire into the dissemination of

materials regarding a tender offer?", the answer is unclear but that is all that is left of Ohio's inquiry and both *MITE* and *Fleet Aerospace* caution that there is no *per se* restriction on state takeover statutes. Both Congress and the Supreme Court of the United States have declined so to state.

Enjoined upon the District Courts, therefore is a balancing consideration on a case-by-case basis of specific facts in a specific situation.

This case is not specific. It is abstract. However, a holding that § 1704.041 is unconstitutional effectively terminates that statute.

Faced with a situation where only a preliminary injunction is sought, where the Court's determination will be meaningless in the case before it, and where a decision favorable to the Plaintiff would destroy a state statute on a *per se* basis, this Court does decline so to rule. That question should be reserved for another day and another case where the question and the balancing is specific and not abstract.

### III.

### CONCLUSIONS OF LAW

A. This Court has jurisdiction pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

B. States are not *per se* prohibited from regulating takeovers. *Edgar v. MITE Corp.,* 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982), *CTS Corp. v. Dynamics Corp.,* —— U.S. ——, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987).

C. Deference should be accorded state legislature in the passage of state laws. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

D. A preliminary injunction is not to be granted "against something merely feared as liable to occur at some indefinite time." *Wisconsin Gas Co. v. F.E.R.C.,* 758 F.2d 669, 674 (C.A.D.C.1985) *quoting Connecticut v. Massachusetts,* 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931).

In accordance with the foregoing Plaintiff's Motion for A Preliminary Injunction should be and is hereby DENIED at Plaintiff's costs.

IT IS SO ORDERED.