PIKE *v.* BRUCE CHURCH, INC.

No. 301.   Argued January 13, 1970—
Decided March 2, 1970

*Rex E. Lee* argued the cause for appellant. With him on the briefs were *Gary K. Nelson,* Attorney General of Arizona, and *Thomas A. Miller,* Assistant Attorney General.

*Jacob Abramson* argued the cause and filed briefs for appellee.

*George C. Lyon* filed a brief for the Western Growers Association as *amicus curiae* urging reversal.

MR. JUSTICE STEWART delivered the opinion of the Court.

The appellee is a company engaged in extensive commercial farming operations in Arizona and California. The appellant is the official charged with enforcing the Arizona Fruit and Vegetable Standardization Act.[1] A provision of the Act requires that, with certain exceptions, all cantaloupes grown in Arizona and offered for sale must "be packed in regular compact arrangement in closed standard containers approved by the supervisor . . . ."[2] Invoking his authority under that provision, the appellant issued an order prohibiting the appellee company from transporting uncrated cantaloupes from its Parker, Arizona, ranch to nearby Blythe, California, for packing and processing. The company then brought this action in a federal court to enjoin the order as unconstitutional. A three-judge court was convened. 28 U. S. C. §§ 2281, 2284. After first granting temporary relief, the court issued a permanent injunction upon the ground that the challenged order constituted an unlawful burden upon interstate commerce. This appeal followed. 28 U. S. C. § 1253. 396 U. S. 812.

---

[1] Ariz. Rev. Stat. Ann., Tit. 3, c. 3, Art. 4.

[2] Ariz. Rev. Stat. Ann. § 3–503 C (Supp. 1969).

The facts are not in dispute, having been stipulated by the parties. The appellee company has for many years been engaged in the business of growing, harvesting, processing, and packing fruits and vegetables at numerous locations in Arizona and California for interstate shipment to markets throughout the Nation. One of the company's newest operations is at Parker, Arizona, where, pursuant to a 1964 lease with the Secretary of the Interior, the Colorado River Indian Agency, and the Colorado River Indian Tribes, it undertook to develop approximately 6,400 acres of uncultivated, arid land for agricultural use. The company has spent more than $3,000,000 in clearing, leveling, irrigating, and otherwise developing this land. The company began growing cantaloupes on part of the land in 1966, and has harvested a large cantaloupe crop there in each subsequent year. The cantaloupes are considered to be of higher quality than those grown in other areas of the State. Because they are highly perishable, cantaloupes must upon maturity be immediately harvested, processed, packed, and shipped in order to prevent spoilage. The processing and packing operations can be performed only in packing sheds. Because the company had no such facilities at Parker, it transported its 1966 Parker cantaloupe harvest in bulk loads to Blythe, California, 31 miles away, where it operated centralized and efficient packing shed facilities. There the melons were sorted, inspected, packed, and shipped. In 1967 the company again sent its Parker cantaloupe crop to Blythe for sorting, packing, and shipping. In 1968, however, the appellant entered the order here in issue, prohibiting the company from shipping its cantaloupes out of the State unless they were packed in containers in a manner and of a kind approved by the appellant. Because cantaloupes in the quantity involved can be so packed only

in packing sheds, and because no such facilities were available to the company at Parker or anywhere else nearby in Arizona, the company faced imminent loss of its anticipated 1968 cantaloupe crop in the gross amount of $700,000. It was to prevent this unrecoverable loss that the District Court granted preliminary relief.[3]

After discovery proceedings, an agreed statement of facts was filed with the court. It contained a stipulation that the practical effect of the appellant's order would be to compel the company to build packing facilities in or near Parker, Arizona, that would take many months to construct and would cost approximately $200,000. After briefing and argument, the court issued a permanent injunction, finding that "the order complained of constitutes an unlawful burden upon interstate commerce." [4]

The appellant's threshold contention here is that even though the challenged order expressly forbids the interstate bulk shipment of the company's cantaloupes, it imposes no burden upon interstate commerce. If the Arizona Act is complied with, he argues, all that will be regulated will be the intrastate packing of goods destined for interstate commerce. Articles being made ready for interstate movement are not necessarily yet in interstate commerce, which, he says, begins only when the articles are delivered to the interstate shipper. In making this argument, the appellant relies on this Court's

---

[3] In view of the emergency situation presented, and the fact that only a narrow and specific application of the Act was challenged as unconstitutional, the court was fully justified in not abstaining from the exercise of its jurisdiction pending litigation in the state courts. Compare *Hostetter* v. *Idlewild Liquor Corp.*, 377 U. S. 324, 329 with *Reetz* v. *Bozanich, ante,* p. 82.

[4] The opinion of the District Court is unreported.

decisions in *Federal Compress Co.* v. *McLean,* 291 U. S. 17, and *Chassaniol* v. *City of Greenwood,* 291 U. S. 584. Both of those cases involved taxes imposed by Mississippi on a cotton warehouse and compress business located within that State. The taxes were nondiscriminatory and were levied both on the warehoused cotton itself and on certain processes necessary to ready it for subsequent resale. The taxes were challenged as unlawful burdens on interstate commerce, since most of the taxed cotton was ultimately to be shipped to out-of-state buyers. The Court upheld the constitutionality of the Mississippi taxes. It is not entirely clear from the Court's opinions whether their rationale was that the taxes were imposed before interstate commerce had begun, or that the burden upon commerce was at the most indirect and remote.

But in any event, the decisions do not support the argument that the order in the present case does not affect interstate commerce. In the first place, those cases involved cotton that had come to rest in Mississippi, and "[b]efore shipping orders [were] given, it [had] no ascertainable destination without the state." 291 U. S., at 21. Here, by contrast, the perishable cantaloupes were destined to be shipped to an ascertainable location in California immediately upon harvest. Even more to the point, the taxes in *Federal Compress* and *Chassaniol* were imposed on goods and operations within the State, whereas the application of the statute at issue here would require that an operation now carried on outside the State must be performed instead within the State so that it can be regulated there. If the appellant's theory were correct, then statutes expressly requiring that certain kinds of processing be done in the home State before shipment to a sister State would be immune from constitutional challenge. Yet such stat-

utes have been consistently invalidated by this Court under the Commerce Clause. *Foster-Fountain Packing Co.* v. *Haydel,* 278 U. S. 1; *Johnson* v. *Haydel,* 278 U. S. 16; *Toomer* v. *Witsell,* 334 U. S. 385. See also *Lemke* v. *Farmers Grain Co.,* 258 U. S. 50; *Shafer* v. *Farmers Grain Co.,* 268 U. S. 189. Thus it is clear that the appellant's order does affect and burden interstate commerce, and the question then becomes whether it does so unconstitutionally.

Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Cement Co.* v. *Detroit,* 362 U. S. 440, 443. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. Occasionally the Court has candidly undertaken a balancing approach in resolving these issues, *Southern Pacific Co.* v. *Arizona,* 325 U. S. 761, but more frequently it has spoken in terms of "direct" and "indirect" effects and burdens. See, *e. g., Shafer* v. *Farmers Grain Co., supra.*

At the core of the Arizona Fruit and Vegetable Standardization Act are the requirements that fruits and vegetables shipped from Arizona meet certain standards of wholesomeness and quality, and that they be packed in standard containers in such a way that the outer layer or exposed portion of the pack does not "materially

misrepresent" the quality of the lot as a whole.[5]   The impetus for the Act was the fear that some growers were shipping inferior or deceptively packaged produce, with the result that the reputation of Arizona growers generally was being tarnished and their financial return concomitantly reduced.   It was to prevent this that the Act was passed in 1929.   The State has stipulated that its primary purpose is to promote and preserve the reputation of Arizona growers by prohibiting deceptive packaging.

We are not, then, dealing here with "state legislation in the field of safety where the propriety of local regulation has long been recognized," [6] or with an Act designed to protect consumers in Arizona from contaminated or unfit goods.   Its purpose and design are simply to protect and enhance the reputation of growers within the State.   These are surely legitimate state interests.   *Sligh* v. *Kirkwood,* 237 U. S. 52, 61.   We have upheld a State's power to require that produce packaged in the State be packaged in a particular kind of receptacle, *Pacific States Box & Basket Co.* v. *White,* 296 U. S. 176.   And we have recognized the legitimate interest of a State in maximizing the financial return to an industry within it. *Parker* v. *Brown,* 317 U. S. 341.   Therefore, as applied to Arizona growers who package their produce in Arizona, we may assume the constitutional validity of the Act. We may further assume that Arizona has full constitutional power to forbid the misleading use of its name on produce that was grown or packed elsewhere.   And, to the extent the Act forbids the shipment of contaminated or unfit produce, it clearly rests on sure footing. For, as the Court has said, such produce is "not the legiti-

---

[5] Ariz. Rev. Stat. Ann. §§ 3–481 (7) and (8).

[6] *Southern Pacific Co.* v. *Arizona,* 325 U. S. 761, 796 (Douglas, J., dissenting).

mate subject of trade or commerce, nor within the protection of the commerce clause of the Constitution." *Sligh* v. *Kirkwood, supra,* at 60; *Baldwin* v. *Seelig,* 294 U. S. 511.

But application of the Act through the appellant's order to the appellee company has a far different impact, and quite a different purpose. The cantaloupes grown by the company at Parker are of exceptionally high quality. The company does not pack them in Arizona and cannot do so without making a capital expenditure of approximately $200,000. It transports them in bulk to nearby Blythe, California, where they are sorted, inspected, packed, and shipped in containers that do not identify them as Arizona cantaloupes, but bear the name of their California packer.[7] The appellant's order would forbid the company to pack its cantaloupes outside Arizona, not for the purpose of keeping the reputation of its growers unsullied, but to enhance their reputation through the reflected good will of the company's superior produce. The appellant, in other words, is not complaining because the company is putting the good name of Arizona on an inferior or deceptively packaged product, but because it is not putting that name on a product that is superior and well packaged. As the appellant's brief puts the matter, "It is within Arizona's legitimate interest to require that interstate cantaloupe purchasers be informed that this high quality Parker fruit was grown in Arizona."[8]

---

[7] California Agric. Code § 45691. The California Fruit, Nut and Vegetable Standardization Act, California Agric. Code, Division 17, is virtually identical to the Arizona Act. Each statute has the same primary purpose of preventing deceptive packs, and it is stipulated that the standard containers required for cantaloupes in the two States are exactly the same.

[8] Appellant's Brief 43.

Although it is not easy to see why the other growers of Arizona are entitled to benefit at the company's expense from the fact that it produces superior crops, we may assume that the asserted state interest is a legitimate one. But the State's tenuous interest in having the company's cantaloupes identified as originating in Arizona cannot constitutionally justify the requirement that the company build and operate an unneeded $200,000 packing plant in the State. The nature of that burden is, constitutionally, more significant than its extent. For the Court has viewed with particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere. Even where the State is pursuing a clearly legitimate local interest, this particular burden on commerce has been declared to be virtually *per se* illegal. *Foster-Fountain Packing Co.* v. *Haydel,* 278 U. S. 1; *Johnson* v. *Haydel,* 278 U. S. 16; *Toomer* v. *Witsell,* 334 U. S. 385.

The appellant argues that the above cases are different because they involved statutes whose express or concealed purpose was to preserve or secure employment for the home State, while here the statute is a regulatory one and there is no hint of such a purpose. But in *Toomer* v. *Witsell, supra,* the Court indicated that such a burden upon interstate commerce is unconstitutional even in the absence of such a purpose. In *Toomer* the Court held invalid a South Carolina statute requiring that owners of shrimp boats licensed by the State to fish in the maritime belt off South Carolina must unload and pack their catch in that State before "shipping or transporting it to another State." What we said there applies to this case as well:

"There was also uncontradicted evidence that appellants' costs would be materially increased by the

necessity of having their shrimp unloaded and packed in South Carolina ports rather than at their home bases in Georgia where they maintain their own docking, warehousing, refrigeration and packing facilities. In addition, an inevitable concomitant of a statute requiring that work be done in South Carolina, even though that be economically disadvantageous to the fishermen, is to divert to South Carolina employment and business which might otherwise go to Georgia; the necessary tendency of the statute is to impose an artificial rigidity on the economic pattern of the industry." 334 U. S., at 403-404.[9]

While the order issued under the Arizona statute does not impose such rigidity on an entire industry, it does impose just such a straitjacket on the appellee company with respect to the allocation of its interstate resources. Such an incidental consequence of a regulatory scheme could perhaps be tolerated if a more compelling state interest were involved. But here the State's interest is minimal at best—certainly less substantial than a State's interest in securing employment for its people. If the Commerce Clause forbids a State to require work to be done within its jurisdiction to promote local employment, then surely it cannot permit a State to require a person to go into a local packing business solely for the sake of enhancing the reputation of other producers within its borders.

*The judgment is affirmed.*

---

[9] Because of the State's recognized common-law property interest in its fish and wild game, *Toomer* presented an especially strong case for state control.