ALLEN, Judge,
concurring in part and dissenting in part.
Because there is no substantial nexus for Commerce Clause purposes under the circumstances presented here, I agree with the majority that the finding and penalty with respect to the section 520.32(1), Florida Statutes, license tax must be set aside. I respectfully disagree, however, with the majority’s conclusion that the loan broker statutes may be applied to Credicorp without offending the Commerce Clause.
The Commerce Clause grants the congress power “[t]o regulate Commerce ... among the several States.” Although the provision speaks in terms of a power granted to the congress, it has been recognized that it also limits the power of the states to erect barriers to interstate trade. See, e.g., Lewis v. BT Inv. Managers, Inc., 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980); Hughes v. Oklahoma, 441 U.S. 322, 326, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979); Philadelphia v. New Jersey, 437 U.S. 617, 623, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). This limitation, however, is not absolute. In the absence of conflicting federal legislation, the states may exercise their general police powers to regulate matters of “legitimate local concern,” even though interstate commerce may be affected. See, e.g., Lewis, 447 U.S. at 36, 100 S.Ct. at 2015; Raymond Motor Transp., Inc. v. Rice, 434 U.S. 429, 440, 98 S.Ct. 787, 793, 54 L.Ed.2d 664 (1978). Yet, notwithstanding the importance of the state interest involved, “it may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently.” Lewis, 447 U.S. at 36, 100 S.Ct. at 2015, quoting Philadelphia v. New Jersey, 437 U.S. at 626-627, 98 S.Ct. at 2537; see also Hughes, 441 U.S. at 336, 99 S.Ct. at 1736; Hunt v. Washington State Apple Advertising Comm’n, 432 U.S. 333, 353, 97 S.Ct. 2434, 2446, 53 L.Ed.2d 383; Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Accordingly, a virtually per se rule of invalidity has been applied where outright protectionism is involved. See, e.g., Lewis, 447 U.S. at 36,100 S.Ct. at 2015; Philadelphia v. New Jersey, 437 U.S. at 624, 98 S.Ct. at 2535. But the prohibition against discrimination is not limited to obviously protectionist legislation. Indeed, discrimination against interstate commerce is impermissible even though the discrimination is not apparent from a mere reading of the legislation, and even though the legislation may not have been enacted for purposes of economic protection. See Hunt, 432 U.S. at 352-353, 97 S.Ct. at 2446. It is enough that the legislation mere *387 ly discriminates against interstate commerce “in practical effect.” Hughes, 441 U.S. at 336, 99 S.Ct. at 1736.
A three-part test has been applied to determine whether a state legislative enactment impermissibly discriminates against interstate commerce. Under that test, we must inquire: (1) whether the challenged statute discriminates against interstate commerce, either on its face or in practical effect; (2) whether the statute serves a legitimate state purpose; and, if so, (3) whether alternative means could promote this purpose as well without discriminating against interstate commerce. See Hughes, 441 U.S. at 336, 99 S.Ct. at 1736; Pike, 397 U.S. at 142, 90 S.Ct. at 847. Even assuming that there is a legitimate state purpose for including retail installment sellers within the coverage of Florida’s loan broker statutes, an analysis under the first and third parts of the foregoing test reveals that the statutes may not be applied to out-of-state retail installment sellers such as Credicorp to the exclusion of licensed instate retail installment sellers.
As construed by the majority, the loan broker statutes treat out-of-state retail installment sellers not subject to the section 520.32(1) license tax differently from local retail installment sellers who are subject to the 520.32(1) tax. Out-of-state retail installment sellers such as Credicorp are subject to the statutes, but in-state licensed retail installment sellers are exempt. See § 687.14(4), Fla.Stat. This unequal application results in harmful discrimination against out-of-state businesses such as Credicorp because it forces them to make a choice: they must either pay the unconstitutional 520.32(1) license tax, or, pursuant to the prohibition of section 687.141(1), Florida Statutes, they must refrain from a practice which is permitted for local, licensed retail installment sellers, the charging of an advance fee for the extension of credit. See § 687.141(1), Fla.Stat.
In light of the discriminatory effect of the loan broker statutes, a further inquiry must be made under the test set forth above: whether alternative means could promote the state regulatory purpose as well without discriminating against interstate commerce. The answer seems fairly obvious. The discriminatory effect could easily be removed by making the loan broker statutes applicable to all retail installment sellers. Indeed, if the legislature has determined that a legitimate state purpose is served by making the loan broker statutes applicable to some retail installment sellers, I see no valid reason for failing to make them applicable to all retail installment sellers, and none has been suggested by the appellee.
Because the loan broker statutes, as construed by the majority, discriminate against interstate commerce, and because this discrimination could easily be eliminated, the statutes violate the Commerce Clause to the extent that they are applied to unlicensed out-of-state retail installment sellers such as Credicorp. Accordingly, I would hold that the loan broker statutes may not be applied to such businesses.
The majority does not suggest that the loan broker statutes are being applied equally to all retail installment sellers, and the majority acknowledges that out-of-state businesses such as Credicorp must make the choice described above. But the majority suggests that such treatment of out-of-state businesses is acceptable for three reasons.
First, the majority says that the loan broker statutes do not violate the Commerce Clause because they do not amount to “overtly protectionist legislation.” I agree that the loan broker statutes are not overtly protectionist legislation such as the legislation at issue in the cases cited in the majority opinion. But, under the test enunciated in eases such as Hughes v. Oklahoma and Pike v. Bruce Church, that is not the end of the inquiry. As explained above, even legislation that is not overtly protectionist violates the Commerce Clause if it has the effect of unnecessarily discriminating against interstate commerce.
Second, the majority says that the loan broker statutes are permissible because they regulate, rather than prohibit, loan brokering. But I know of no exclusion from Commerce Clause scrutiny which must or should be accorded to legislation simply because it fails to absolutely prohibit an economic activity. Indeed, there are numerous examples of state statutes held to be violative of the *388 Commerce Clause even though they did not have the effect of prohibiting economic activity. See, e.g., Hunt, 432 U.S. at 333, 97 S.Ct. at 2434; Pike, 397 U.S. at 137, 90 S.Ct. at 844.
Finally, the majority says that the loan broker statutes meet constitutional scrutiny because Credicorp could pay the section 520.32(1) license tax and be excepted from the loan broker statutes, thereby overcoming any significant competitive advantage that instate retail installment sellers might have as a result of the loan broker statutes. I know of no other authority for the proposition that states may discriminate against interstate commerce through regulatory legislation so long as the burden of that discrimination may be overcome through payments by affected out-of-state businesses into the state’s treasury. I doubt that such authority existed before today. And the majority’s holding in this regard seems particularly enigmatic in light of the fact that the suggested payment into the state treasury would be for a license tax which, according to the same majority, may not lawfully be assessed against Credi-corp because of the prohibition of — the Commerce Clause.
I would reverse the order in its entirety.