**PUBLISHED**

Filed: June 24, 2004

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PSINet, Incorporated;
Charlottesville Sexual Health &
Wellness Clinic; Portico
Publications, Ltd., Publisher of
Charlottesville Weekly; Silverchair
Science Communications,
Incorporated; Virginia ISP
Alliance; Rockbridge Global
Village; American Booksellers
Foundation for Free Expression;
The Periodical and Book
Association of America,
Incorporated; Freedom to Read
Foundation; Sexual Health
Network; Chris Filkins, Proprietor
of the Safer Sex Institute; Harlan
Ellison; The Comic Book Legal
Defense Fund; Susie Bright; A
Different Light Bookstores;
Lambda Rising Bookstores;
Bibliobytes; People for the
American Way,

          *Plaintiffs-Appellees,*

    and

United States Internet Service
Provider Association,

          *Plaintiff,*

    v.

No. 01-2352

WARREN D. CHAPMAN,
Commonwealth Attorney; JAMES L.
CAMBLOSS, III, Commonwealth
Attorney,
                    *Defendants-Appellants.*

## ORDER

Appellants filed a petition for rehearing and rehearing *en banc*.

Judges Spencer and Davis voted to deny the petition for rehearing, and Judge Niemeyer voted to grant it.

On the poll requested by a member of the court on the petition for rehearing *en banc*, Judges Widener, Niemeyer, Luttig, and Duncan voted to grant rehearing *en banc*, and Judge Michael voted to deny rehearing *en banc*. Chief Judge Wilkins, and Judges Wilkinson, Williams, Motz, Traxler, King, Gregory, and Shedd disqualified themselves from participating in this case.

The petition for rehearing is denied, and, because the poll on rehearing *en banc* failed to produce a majority of judges in active service in favor of rehearing *en banc*, the petition for rehearing *en banc* is also denied. Judge Niemeyer wrote an opinion dissenting from the denial of rehearing *en banc*.

Entered for the Court,

/s/ Patricia S. Connor
CLERK

NIEMEYER, Circuit Judge, dissenting from the denial of rehearing *en banc*:

By a vote of 4-1, judges of this court voted to rehear this case *en banc*. Because 8 judges disqualified themselves from voting, how-

ever, the case will not be reheard. *See* Fourth Circuit Local Rule 35(b) (requiring for *en banc* review the vote of a majority of circuit judges who are in regular, active service). This procedural bar is particularly unfortunate as it applies to this seminal First Amendment case because the law of the Fourth Circuit is now written solely by two district judges who were designated to sit on the three-judge panel, and not by any circuit judge.

The panel majority struck down as unconstitutional Virginia's narrowly tailored regulation of pornography on the Internet. *See* Va. Code Ann. § 18.2-391(A) (1999); *PSINet, Inc. v. Chapman*, 362 F.3d 227 (4th Cir. 2004). The Virginia statute was originally patterned on a statute upheld by the Supreme Court in *Ginsberg v. New York*, 390 U.S. 629 (1968), and the Virginia version was specifically upheld by us against a First Amendment challenge in *American Booksellers Association, Inc. v. Virginia*, 882 F.2d 125, 127-28 (4th Cir. 1989), *cert. denied*, *Virginia v. American Booksellers Association, Inc.*, 494 U.S. 1056 (1990). When Virginia clarified this statute in 1999 to make explicit that its regulation applies to the electronic medium, however, this second facial challenge was launched, and the panel majority has now employed the 1999 clarification as a rationalization to reexamine the statute and to reverse our previous holding in *American Booksellers*.

To protect juveniles from open displays of sexually explicit materials, Virginia adopted its regulation of pornography in 1985, making it unlawful "to knowingly display for commercial purpose" pornographic materials that are harmful to juveniles "in a manner whereby juveniles may examine and peruse" them. Va. Code Ann. § 18.2-391(a) (1985). Materials regulated by the statute included any "visual representation or image" or any "printed matter however reproduced, or any sound recording." *Id.* By a 1999 amendment to this statute, Virginia made it explicit that "visual representation or image" included any "electronic file or message." Va. Code Ann. § 18.2-391(A) (1999). It is this 1999 amendment that led to the second facial challenge of the statute.

Considering the statute in the context of the Internet, the district court recognized that the Virginia statute is limited to *commercial displays of pornography* and also that credit card identification systems

and PIN numbers, as well as age verification services, are now technologically available to place such commercial pornographic materials in restricted zones in the Internet. *PSINet, Inc. v. Chapman*, 167 F. Supp. 2d 878, 888 (W.D. Va. 2001). These same technological facilities were recognized by the Supreme Court as constitutionally valid means to regulate pornographic Internet materials. *See Ashcroft v. ACLU*, 535 U.S. 564, 583 & n.14 (2002) (stating that the Child Online Protection Act does not banish from the Internet material deemed harmful to minors because "[i]t only requires that such material be placed behind adult identification screens"). In view of these technological developments, Virginia argues:

> In the world of web-based pornography, "electronic screens" requiring credit card or age verification devices are commonplace. So, too, are "teasers," hardcore pornography strategically placed in front of such screens. All commercial pornographers need to do to abide by Virginia law is to move these pre-existing "screens" so that such screens appear before pornographic teasers are displayed.

This is a very modest and technologically feasible requirement that will restrict pornographic materials to adult zones. Just as the Virginia statute had already been upheld for constitutionality when argued from the point of view of a bookseller, who was impliedly required to undertake minimally burdensome steps to deny juveniles access to harmful materials while preserving access for adults, *see Am. Booksellers*, 882 F.2d at 127-28, a facial review now leads to the same conclusion when argued from the point of view of a seller from an Internet website.

To reach its conclusion that Virginia's statute violates the First Amendment, the panel majority relies on propositions that are unsupported by the record or that are irrelevant to a determination of the scope of the statute. For example, the majority says that "Internet speakers have no way of preventing Virginia juveniles from accessing their Internet speech." *PSINet, Inc. v. Chapman*, 362 F.3d 227, 235 (4th Cir. 2004). Yet, as has been pointed out, Virginia demonstrated and the district court accepted the fact that commercial websites distributing pornography are using available technology effectively to create adult zones that regulate access to their material.

The majority also says that § 18.2-391's "attempt to deny minors access to potentially harmful speech . . . will 'effectively suppress[ ] a large amount of speech that adults have a constitutional right to receive and to address to one another.'" 362 F.3d at 235. Yet, there is no evidence in the record that the Virginia statute will operate to suppress *any speech* among adults. Both Virginia and the district court recognized that, under the statute, adults will *always* have access to commercially provided pornographic materials. The only question that arose was whether the mechanisms for restricting access to adults were too burdensome. But, just as adults who seek access to adult magazines and books must enter a bookstore and demonstrate their age to the bookseller, Virginia has demonstrated that adults seeking pornography from commercial purveyors on the Internet may enter an adult zone through use of credit cards, PINs, or other demonstrated technological gateways and thereby gain access to adult material. Notably, the statute does not reach non-commercial exchanges such as occur in e-mail or chat-rooms.

In response to the method for creating adult zones on the Internet, the panel majority states that "many adults may be unwilling to provide their credit card number online, and would therefore not visit the site. Such a restriction would also serve as a complete block to adults who wish to access adult material but do not own a credit card." 362 F.3d at 236-37. But so too are many adults unwilling to enter an adult bookstore and ask for material protected from juveniles. Yet, we have already held in *American Booksellers* that the Virginia statute imposing these minimal burdens on adults appropriately serves the compelling state interest of protecting juveniles from pornography and therefore is constitutional against a First Amendment challenge.

On the Commerce Clause issue, the panel majority's holding is unprecedented. The panel majority concludes essentially that the Commonwealth of Virginia may not regulate the Internet in any respect because "the nature of the Internet itself makes the Commonwealth's proposed construction nearly impossible." 362 F.3d at 240. It concludes that any regulation of the Internet by a state involves regulation far beyond the state's reach and therefore cannot be upheld under the Commerce Clause. This, however, is contrary to the Supreme Court's jurisprudence as represented by *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon*, 511

U.S. 93, 99 (1994), and *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Virginia is justifiably concerned with the open and unrestricted display to juveniles of pornographic materials harmful to them, and it concededly has a compelling interest in imposing restrictions on the display of those materials. The 1985 version of § 18.2-391, as well as the 1999 amendment, imposes restrictions only on the display of such materials for commercial purposes, and this limitation, coupled with existing technology, does not deny adults any constitutionally protected speech. *See Ginsberg*, 390 U.S. at 638 & n.6. Moreover, the Virginia Supreme Court has construed Virginia's regulation narrowly, directing only that commercial purveyors may not *knowingly* display such materials to juveniles and that, if they are aware that such juveniles are perusing such materials, they must take *reasonable steps* to prevent the perusal. *See Commonwealth v. Am. Booksellers Ass'n, Inc.*, 372 S.E.2d 618, 625 (Va. 1988).

For Virginia, this case is, when left unreviewed, a procedural injustice worked by the rules of judicial assignments and by an otherwise appropriate local rule for *en banc* review. It is also, in my judgment, a substantive injustice for the people of Virginia, who have carefully crafted legislation to regulate commercial pornography on the Internet for the safety and well being of the juveniles in the Commonwealth without denying such material to adults.

Accordingly, I dissent from our inability to rehear this important case *en banc*.