CORRIGAN, J.
(concurring). I concur in Justice CAVANAGH’s analysis. I write separately to emphasize the limited scope of the federal-instrumentality status of the Detroit International Bridge Company (DIBC) with regard to its commercial operation of fueling stations and similar activities that are less directly related to taking tolls or facilitating bridge traffic. I also write to underscore Justice CAVANAGH’s point that even activities that are related to the DIBC’s federal purpose are not entirely immune from local regulation.
As Justice CAVANAGH states, “the DIBC is an instrumentality of the federal government for the limited purpose of facilitating traffic flow over the bridge.” Ante at 47. The trial court reasonably concluded that the new configuration of the diesel station aided traffic flow. Further, the city does not appear to have argued that the DIBC wrongly maintained a station in its previous location or violated local zoning requirements merely by slightly increasing the number of pumps. Accordingly, I agree with the trial court’s result and this Court’s reasons for affirming that result.
I would simply emphasize, first, that the record does not establish the extent to which maintaining a diesel fueling station at all relates to the DIBC’s federal *54 purpose.[1] Rather, because the city did not challenge the existence of the station itself, the trial court correctly focused on whether the station’s reconfiguration — not its existence — furthered the DIBC’s federal purpose. Therefore, I find it worth noting that the DIBC may not engage in unfettered expansion or movement of its current activities simply because expansion or relocation aids traffic flow; rather, the activity to be relocated or the expansion of that activity must itself he related to the DIBC’s federal purpose in order for it to be immune from full regulation by the city. I highlight Justice CAVANAGH’s conclusion that, in analyzing limited, conduct-based immunity, the facts underlying each action challenged must be examined to ensure that the action does not cross the “line where this immunity stops because the instrumentality’s act is outside the scope of its federal purpose[.]” Ante at 48.
Second, I would emphasize that all local regulation is not automatically preempted with respect to the DIBC’s immune activities. Justice CAVANAGH notes that the city issued a variance to the DIBC that included amorphous conditions concerning noise, smoke, and odor at the DIBC’s site. The conditions effectively give the city unrestricted authority to revoke the variance. Ante at 50. Because the variance gives the city the same broad power to inhibit the DIBC’s federally mandated activities as did the zoning ordinance, the variance would be similarly preempted. But because the city seeks, in part, *55 to regulate public health and safety, including local air quality, I note that the city retains the traditional police power to protect the health and safety of its citizens.[2] The city may certainly impose health and safety regulations to the extent that those regulations do not inhibit the DIBC’s ability to carry out its federal purpose.

 Perhaps commercial trucks’ use of the bridge — which may include idling and delays as a result of federal activities including customs inspections — is significantly facilitated by on-site access to diesel fuel. Perhaps the DIBC derives profit from its fueling operation that offsets the costs of maintaining the bridge and, therefore, enables tolls to remain at affordable levels. Nonetheless, because the city challenged only the reconfiguration of the fueling station, the exact nature of the station’s relationship to the DIBC’s federal purpose is not at issue.

 As the United States Supreme Court observed in Pike v Bruce Church, Inc, 397 US 137, 142; 90 S Ct 844; 25 L Ed 2d 174 (1970), “the extent of the burden [from local regulation] that will be tolerated will of course depend on the nature of the local interest involved----” The state’s traditional police power to protect the health and safety of its citizens is unquestioned. The Supreme Court has observed:
In determining whether the state has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution when “conferring upon Congress the regulation of commerce,... never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country.” [Huron Portland Cement Co v Detroit, 362 US 440, 443-444; 80 S Ct 813; 4 L Ed 2d 53 (1960) (citation omitted).]
Similarly, see Gen Motors Corp v Tracy, 519 US 278, 306-307; 117 S Ct 811; 136 L Ed 2d 761(1997); Head v New Mexico Bd of Optometry Examiners, 374 US 424, 428-429; 83 S Ct 1759; 10 L Ed 2d 983 (1963).