MERRITT, Circuit Judge,
concurring.
State regulation of gambling is different from state regulation of cantaloupes,[1] oil and gas,[2] milk,[3] trash,[4] and similar products and services. Gambling may be outlawed altogether as a vice that is a threat to the health, safety and welfare of the public. Through a democratic referendum process, it may be outlawed or the market for gambling limited. Although Proposal 1 creates on its face a monopoly for three Detroit casinos engaged in casino-type gambling games, the law continues to permit plaintiffs to engage in para-mutual betting on in-state racing and “simulcast” out-of-state racing. In the case of gambling, whether a law discriminates facially or otherwise against potential in-state or out-of-state gambling enterprises appears to be constitutionally irrelevant. The ban on gambling may be either total or selective because the Supreme Court has made it clear that the “greater includes the lesser.” If gambling is to be treated as any other normal item of commerce, the Supreme Court will have to overrule Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico, 478 U.S. 328, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986), in which the Court reasoned as follows:
[I]t is precisely because the government could have enacted a wholesale prohibition of the underlying conduct [gambling] that it is permissible for the government to take the less intrusive step of allowing the conduct but reducing the demand through restrictions.... It would just as surely be a strange constitutional doctrine which would concede to the legislature the authority to totally, ban a product or activity, but deny to the legislature the authority to forbid the stimulation of demand for the product or activity....
In the Posadas case, the Supreme Court was dealing with a prohibition on the advertising of gambling enterprises to residents of Puerto Rico, but allowing such advertising to people everywhere else. Puerto Rico was happy to let nonresidents lose their money at casinos but not its own citizens. The law clearly discriminated on its face and created a prior restraint on speech directed at Puerto Ricans. If such in-state and out-of-state discrimination is irrelevant when dealing with what would otherwise constitute a clear free speech violation, it is certainly irrelevant with respect to less restrictive constitutional provisions like the Commerce Clause.[5] Therefore, I do not see the need for an *591 analysis of the degree of the “discriminatory burden that triggers Dormant Commerce Clause scrutiny.” (Maj. op. 588.) The more general rule of Posadas makes a weighing process unnecessary concerning the amount of interstate commerce affected by the Proposal l’s gambling restrictions.
If the economic activity were different so that the monopoly consisted of three TV stations or three barge companies and the aggrieved party was a newspaper or a manufacturer of tow boats, we would most likely say that we have a law discriminatory on its face and that the monopoly burdens interstate and intrastate commerce. In such an obvious case of economic protectionism, our analysis and weighing process would be entirely different. These hypothetical cases prove to me that the outcome is driven by the fact that the activity is gambling. If it were milk, news or shipping, our attitude and the result would change. Posadas is the key, not Exxon.

. Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

. Exxon Corp. v. Governor of Md., 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978).

. Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981).

. Philadelphia v. New Jersey, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978).

. The language from Posadas quoted in the text has been questioned in later cases but not overruled. See 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 509, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996); Greater New Orleans *591 Broadcasting Ass’n v. United States, 527 U.S. 173, 182-83, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999).