*509 GOULD, Circuit Judge,
concurring in the denial of rehearing en banc:
I respectfully file this separate concurrence in the denial order. In my view, the opinion and partial dissent fairly present the key issues in this appeal, and the denial order should be read with the majority opinion’s reasoning in mind. But in light of the views of my dissenting colleagues, I offer supplemental observations.
First, the dissent is riddled with overstatements. For example, it claims that California’s Low Carbon Fuel Standard (“LCFS”) — and the ethanol provisions contained therein — explicitly discriminates against other states and is a “protectionist regulatory scheme that threatens to Bal-kanize our national economy.” Dissent at 512. Not only is this mere alarmist rhetoric, it also does not fit the reality of the California legislation. Moreover, although the dissent trumpets that nine states seek rehearing, the converse is that 41 do not. And some states, like Washington and Oregon, have already joined California in its endeavor to combat global warming by reducing greenhouse gas emissions from fuels. Finally, the dissent characterizes the LCFS as an extraterritorial regulation, and argues that the majority’s position to the contrary contravenes Supreme Court precedent. This is an incorrect view of the law: California is free to regulate commerce within its borders even if it has an ancillary goal of influencing the choices of actors in other states. See Pharm. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 669, 123 S.Ct. 1855, 155 L.Ed.2d 889 (2003).
Second, the dissent is written as if the majority opinion conclusively determined that the LCFS was above constitutional reproach. It begins, for example, by accusing the majority of “upholding California’s ethanol regulations.” Dissent at 512. It later repeats this charge. See Dissent at 515. We did no such thing. Believing that findings of fact and more proceedings in the district court were needed to determine the LCFS’s constitutionality, we remanded. All we did, in other words, was to reject the argument that the LCFS’s ethanol provisions facially discriminate against out-of-state commerce. Our remand advises the district court to determine “whether the Fuel Standard’s ethanol provisions discriminate in purpose or in practical effect.” Rocky Mtn. Farmers Union v. Corey, 730 F.3d 1070, 1078 (9th Cir.2013). And we instructed the district court to apply strict scrutiny to those provisions if it found that they did discriminate, or to apply the balancing test set forth in Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), if it found that they did not. Rocky Mtn. Farmers Union, 730 F.3d at 1078. The dissent acknowledges our remand, but it rhetorically argues that the remand has a “predestined” outcome, Dissent at 514, because of our statement that the LCFS incorporates state boundaries for “good and non-discriminatory” reasons, Rocky Mtn. Farmers Union, 730 F.3d at 1107. There is a simple response to this critique, which has no legal merit: We reviewed this case at the summary judgment stage. As such, we had to take as true all facts presented by California and reasonable inferences therefrom. Our statement, then, about good and non-discriminatory reasons for incorporating state boundaries into the LCFS methodology is based on evidence that had to be credited at the summary judgment stage. It will not control what the district court decides on remand as it considers the LCFS’s purpose and effect and makes factual findings on disputed evidence.
Similarly, the dissent asserts that our opinion “nullifies” constitutional limitations on states’ ability to legislate in ways that *510 affect other states. Dissent at 513. I disagree. If the LCFS in purpose or practical effect discriminates against interstate commerce, such limitations still exist in the form of strict scrutiny. And even if it does not discriminate, the Pike balancing test imposes its own limitations on states’ ability to legislate in this arena.[1]
Third, the dissent argues that the LCFS’s ethanol provisions facially discriminate against out-of-state commerce by drawing lines based on state borders, and that strict scrutiny therefore applies to invalidate the law. I disagree. For the reasons stated in the majority opinion, I believe that California made its geographic distinctions based on the carbon impact and intensity of various fuels, not on their state-of-origin. True, the LCFS does attribute different carbon intensity values to fuels from different geographic areas. Cal.Code Regs. tit. 17, § 95486(b). But the dissent’s argument that it is “clear that the challenged regulations discriminate against interstate commerce” is wide of the mark. Dissent at 21. A legislative geographic distinction is not facially discriminatory merely because it affects in-state and out-of-state interests unequally. Rather, as long as there is “some reason, apart from their origin, to treat them differently,” California may distinguish between Midwestern, Brazilian, and California ethanols. Philadelphia v. New Jersey, 437 U.S. 617, 627, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). The dissent disregards this principle. To the extent that California treats fuels based on their location, it does so for non-discriminatory reasons; if Midwestern ethanol is more carbon-intensive than its California counterpart, that is so not because of its origin but rather because of its method of production and other objective factors, including transportation-related emissions.
Further, the pathways set forth in the LCFS — and reproduced at the end of the majority opinion in Appendix One — are not immutable legislative classifications. They are default pathways, and while they may be relied upon by producers, they may also be supplanted if a producer creates an individualized pathway by supplying its own data about the carbon emission impact of its product. This allows ethanol producers in California and elsewhere some control over the carbon intensity value assigned to their fuels. And it shows that the dissent’s position that the LCFS facially discriminates is incorrect. The LCFS’s ethanol provisions are based on an objective fact, carbon emissions, not on the constitutionally impermissible goal of benefit-ting local companies at the expense of foreign ones. Such a system does not warrant strict scrutiny.
The dissent notes that “the Fuel Standard expressly assigns a higher carbon intensity to Midwestern ethanol.” Dissent at 516. In fact, however, the lowest carbon intensity values yet — supplied by producers who went outside the default pathways to provide their own data — are from Midwestern and Brazilian ethanol producers. See Cal.Code Regs. tit. 17, § 95486(b)(1); Rocky Mtn. Farmers Union, 730 F.3d at 1084. This is so largely because the LCFS takes into account carbon emissions from transportation, and most California ethanol producers import corn from the Midwest to make their product, whereas Midwestern ethanol produc *511 ers, who have corn close by, avoid those transportation emissions. The geographic distinctions made by California, then, are not classifications based on state boundaries per se; rather, they are classifications based on the carbon impact of fuels as calculated under a rubric that considers transportation-related emissions. That does not warrant strict scrutiny unless the district court concludes that the LCFS discriminates against out-of-state commerce in purpose or practical effect. That is why we remanded with instructions to consider such purpose and effect.
Fourth, the tone and substance of the dissent is perhaps aimed at encouraging Supreme Court review. A petition for writ of certiorari from the parties who sought rehearing is likely forthcoming, but our court properly declines to give its judicial imprimatur to the dissent’s position. Because Supreme Court review is possible, however, I set forth my own views on that prospect. On the one hand, the Supreme Court’s considered judgment could be helpful to clarify as soon as practical what states may do of their own accord to deter or slow global warming. The Supreme Court, if it wants to do so at this time, can set constitutional limits, binding in all circuits, as to what the individual states in our Union may do to combat global warming. The Supreme Court also can give meaning to, or limit, the general principle that state experimentation is often a desirable predicate to actions by other states or the federal government. On the other hand, the record in this case is incomplete and thus unsuitable for understanding the full scope of the issues presented. The panel remanded for findings on discriminatory purpose or effect which, if it exists, would invoke strict scrutiny. And, if not, the majority required on remand that the district court engage in Pike balancing, weighing the LCFS’s benefits against its impact on interstate competition. The issues raised by the dissent, then, may be rendered moot by the district court’s decision, and in any event there will be a more complete record, including findings on purpose and effect, on which to make a ruling about the controlling legal principles.
Fifth, the dissent contends that California admits its scheme will, by itself, have little effect in averting environmental catastrophe. Dissent at 516-17. This argument ignores not only the principle that incremental change, when aggregated, can be significant, but also the possibility that successful experimentation by California could lead to broader action by other states and/or the federal government. The Supreme Court has reminded us that it is “erroneous” to assume that “a small, incremental step, because it is incremental” is legally — or truly — insignificant. Massachusetts v. EPA 549 U.S. 497, 524, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007). Just as a journey of 1,000 miles begins with a single step, so too must legislative action to fight global warming start somewhere. Further, once other states appreciate the benefits of the LCFS, there may be a cascade of similar laws throughout the country — and perhaps federal action— aimed at stemming the tide of global warming. Indeed, proposed legislation in Oregon and Washington is an example of this. See Rocky Mtn. Farmers Union, 730 F.3d at 1104 n. 14; Michael Wines, Climate Pact Is Signed by S States and Partner, N.Y. Times, Oct. 30, 2013, at A18 (noting an agreement between California, Oregon, and Washington, as well as British Columbia, to “raise the cost of greenhouse gas pollution, promote zero-emission vehicles and push for the use of cleaner-burning fuels in transportation” as part of a “broad alliance to combat climate change”).
Meanwhile, global temperatures are increasing, storms are intensifying, polar ice *512 caps are melting, and seas are rising. If California’s experiment with the LCFS is to succeed in inducing increased production of alternative fuels and/or decreased carbon impact of existing fuels, the sooner it can proceed, the better; it could take years, or decades, for other states to recognize the benefits of the LCFS, to react to it, and to engage in similar experiments themselves. Justice Brandéis recognized the importance of this sort of state experimentation in his now-famous dissent in New State Ice Co. v. Liebmann, when he wrote: “It is one of the happy incidents of the federal system that a single courageous state may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country.” 285 U.S. 262, 311, 52 S.Ct. 371, 76 L.Ed. 747 (1932) (Brandéis, J., dissenting). This is what California has done with the LCFS. The benefits that may flow from such cooperative state action do not, as the dissent urges, threaten to “Balkanize our national economy.” Dissent at 512. Rather, the development of alternative fuels and a market system regulating carbon emissions would likely benefit the national economy.
Sixth, the dissent’s argument that California’s “economic clout” means that the “practical effect” of the LCFS is to regulate commerce beyond California’s borders misstates the law. Dissent at 517-18. In fact, Supreme Court precedent points in a contrary direction. See, e.g., Walsh, 538 U.S. at 669, 123 S.Ct. 1855 (refusing to apply the extraterritoriality doctrine to a law that “does not regulate the price of any out-of-state transaction, either by its express terms or by its inevitable effect” (internal quotation marks omitted)). While a state may not mandate compliance with its preferred policies in wholly out-of-state transactions, it may regulate commerce within its boundaries even if one of its goals is to influence the out-of-state choices of market participants. See id. This is what California permissibly has done with the LCFS.[2]
A majority of active judges on our court wisely refused to grant en banc consideration in this case. I concur in the order denying rehearing en banc.
M. SMITH, Circuit Judge,

. The dissent’s insistence that strict scrutiny should be applied to the regulatory provisions here, absent a finding of discriminatory purpose or effect, is a type of "archaic formalism” that should not be encouraged by the Supreme Court. Rocky Mtn. Fanners Union, 730 F.3d at 1107. In my view, the Supreme Court has not applied strict scrutiny to provisions like those in the LCFS based on a theory of facial discrimination.

. If the dissent's position were adopted, it would spell the end of much beneficent state legislation. Let us assume, for example, that a safety-conscious state regulates automobiles, preventing them from being sold in that state absent certain safety protections like airbags or a performance standard requiring a minimum survival rate from a crash at 40 miles per hour. The dissent apparently would say that the safety-conscious state is regulating extraterritorially because its restrictions provide incentives to automakers in other states to make their cars safer if they wish to sell them in the safety-conscious state. I respectfully disagree. The Supreme Court has not said anything to that effect, and, as explained above, its precedent points in the opposite direction.