UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT


No. 95-1243

UNITED EGG PRODUCERS, ET AL.,

Plaintiffs, Appellees,

v.

DEPARTMENT OF AGRICULTURE OF THE
COMMONWEALTH OF PUERTO RICO, ET AL.,

Defendants, Appellants.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge] 


Before

Torruella, Chief Judge, 

Campbell, Senior Circuit Judge, 

and Watson,* Senior Judge. 


Edgardo Rodriguez-Quilichini, Assistant Solicitor General, with 
whom Carlos Lugo-Fiol, Solicitor General, and Jacqueline Novas-Debien, 
Acting Deputy Solicitor General, were on brief for appellants.
Philip C. Olsson with whom Olsson, Frank and Weeda, Enrique M. 
Bray and Nachman, Santiago, Bray & Guillemard were on brief for 
appellees.



March 6, 1996

 

*Of the United States Court of International Trade, sitting by
designation.



CAMPBELL, Senior Circuit Judge. Defendants-appellants the Puerto Rico 

Department of Agriculture and its former Secretary, Alfonso D vila, in

his individual and official capacities, challenge an order of the

United States District Court for the District of Puerto Rico granting

a permanent injunction against the enforcement of Puerto Rico Market

Regulation Number 3, section X(F). Section X(F) requires that eggs

imported into Puerto Rico from the mainland United States be stamped

with the two-letter postal code of the state of origin. The district

court ruled in favor of plaintiffs-appellees United Egg Producers and

Instituto Puertorrique o de Carnes, Inc.,1 after determining that

section X(F) imposed a substantial burden on interstate commerce

contrary to the Dormant Commerce Clause. 

I. The Egg Products Inspection Act and Section X(F) I. The Egg Products Inspection Act and Section X(F)

Although not a state, the Commonwealth of Puerto Rico is subject

to the constraints of the Dormant Commerce Clause to the same degree

as are the states. Trailer Marine Transp. Corp. v. Rivera Vazquez, 

977 F.2d 1, 7 (1st Cir. 1992). In the proceedings below, the district

court ruled that the regulation in question, Puerto Rico Market

Regulation Number 3, section X(F), was an impermissible burden on

interstate commerce hence invalid under the Dormant Commerce Clause.
 

1United Egg Producers is an Atlanta, Georgia, national trade
association whose members include egg producers in every state.
Instituto Puertorrique o de Carnes, Inc., is a San Juan, Puerto Rico,
trade association representing Puerto Rican distributors of food
products.

3

Section X(F) requires the labeling of eggs imported from elsewhere in

the United States into Puerto Rico:

Imported eggs to be marketed in Puerto Rico shall have the
letters from the state of origin if produced in a state of
the United States using the initials established by the
United States Postal Service, . . . stamped on each egg, as
established by the Egg Products Inspection Act (21 USC 1031,
Section 23 b,2).

Puerto Rico Market Regulation Number 3, section X(F). Section X(F)

purports to have been promulgated in conformity with the Egg Products

Inspection Act (EPIA), which provides that: 

no State or local jurisdiction other than those in 
noncontiguous areas of the United States may require labeling 
to show the State or other geographical area of production or
origin.

21 U.S.C. 1052(b)(2) (emphasis supplied). Puerto Rico is, of

course, one of the noncontiguous jurisdictions excepted from the

statute's prohibition against egg-labeling. 

This appeal presents two main questions: (1) whether section X(F)

of Puerto Rico's Market Regulation Number 3 was, in effect,

Congressionally authorized, so as to be beyond the reach of the

constraints of the Dormant Commerce Clause; and (2) if the Dormant

Commerce Clause is applicable, whether section X(F) impermissibly

burdens interstate commerce. We address each of these issues.

II. Congressional Authorization II. Congressional Authorization

The Commerce Clause provides that "Congress shall have Power . .

. To regulate Commerce . . . among the several States." U.S. Const.

art. I, 8, cl. 3. The Supreme Court has interpreted this

4

affirmative grant of authority to Congress as also establishing what

has come to be called the Dormant Commerce Clause -- a self-executing

limitation on state authority to enact laws imposing substantial

burdens on interstate commerce even in the absence of Congressional

action. See South-Central Timber Dev., Inc. v. Wunnicke, 467 U.S. 82, 

87 (1984). The Dormant Commerce Clause does not, however, apply to

state or local regulations directly authorized by Congress. "It is .

. . clear that Congress may 'redefine the distribution of power over

interstate commerce' by 'permit[ting] the states to regulate the

commerce in a manner which would otherwise not be permissible.'" Id. 

at 87-88 (quoting Southern Pac. Co. v. Arizona ex rel. Sullivan, 325 

U.S. 761, 769 (1945)); see also White v. Massachusetts Council of 

Constr. Employers, 460 U.S. 204, 213 (1983); New England Power Co. v. 

New Hampshire, 455 U.S. 331, 340 (1982). Thus, state or local 

jurisdictions operating under "Congressional consent" are free to

enact laws burdening interstate commerce. 

The standard for finding Congressional consent is, however, high.

Congressional consent to otherwise impermissible state regulation must

be either "expressly stated," Sporhase v. Nebraska ex rel. Douglas, 

458 U.S. 941, 960 (1982), or "made unmistakably clear," South-Central, 

467 U.S. at 91. The state or local jurisdiction (in this case the

Commonwealth of Puerto Rico) has the burden of demonstrating Congress'

unmistakably clear intent to allow otherwise discriminatory

regulations. Wyoming v. Oklahoma, 502 U.S. 437, 458 (1992). 

To determine if Congressional consent was extended here, so as

5

to authorize Puerto Rico's labeling regulation regardless of its

impact on commerce, we begin by examining Congress' language. In

section 1052(b)(2), Congress did not state affirmatively that

noncontiguous jurisdictions could "require labeling to show the State

or other geographical area of production or origin." Instead,

Congress excepted "noncontiguous areas of the United States" including

Puerto Rico, from the blanket prohibition it was placing upon egg-

labeling in all other places. 21 U.S.C. 1052(b)(2). Read literally,

1052(b)(2) can be said to go no further than to exempt Puerto Rico

from Congress' own egg-labeling ban. The exemption is consistent with

intending to allow Puerto Rico to adopt only egg-labeling requirements

that do not otherwise violate the Dormant Commerce Clause -- i.e.,

regulations justified by a legitimate state interest, such as to

protect the health of its residents, that could not be met via

nondiscriminatory alternatives.2 

To be sure, the statutory exemption is perhaps susceptible to a

reading going beyond the above. One can argue that as Congress had

 

2Before the enactment of 1052(b)(2), any egg-labeling
requirements passed by the states would have been subject to Dormant
Commerce Clause analysis and upheld only if they did not substantially
burden interstate commerce or if the burden on interstate commerce was
justified by a legitimate state interest. After the enactment of 
1052(b)(2), states in contiguous areas of the United States were
prohibited from enacting any egg-labeling requirements, regardless of
whether it was possible to compose such a requirement in such a way as
to withstand Dormant Commerce Clause scrutiny. In addition, in 
1052(b)(2), Congress indicated a preference for Puerto Rico and other
noncontiguous areas of the United States by specifically exempting
them from its blanket prohibition on egg-labeling.

6

before it the whole subject of egg-labeling, its exemption of

noncontiguous jurisdictions must be understood to signify, by

implication, Congressional approval of any and all egg-labeling

requirements in those places regardless whether justified or

unjustified by Dormant Commerce Clause considerations. But this seems

to us a more extreme reading than either the statutory language or

legislative history necessitates.3 Absent, at least, an

affirmatively stated grant of permission to noncontiguous

jurisdictions of the United States to require egg-labeling, we are

unable to conclude that appellants have met their burden of showing

that Congress' intent to allow Puerto Rico to enact protectionist egg-

labeling regulations was "unmistakably clear." See e.g., Maine v. 

Taylor, 477 U.S. 131, 139 (1986) (holding that state statutes are 

exempt "from the implied limitations of the [Commerce] Clause only

when the congressional direction to do so has been 'unmistakably

clear'"); South-Central, 467 U.S. at 90 (finding that "on those 

occasions in which consent has been found, congressional intent and
 

3The legislative history of 1052(b)(2) is silent on whether
Congress intended to immunize regulations like section X(F) from
Dormant Commerce Clause scrutiny. It is true that the United States
Department of Agriculture, arguing in opposition to the exemption,
stated that 1052(b)(2)'s "exemption would allow ... Puerto Rico ...
to require eggs shipped from the continental United States to be
labeled" and therefore recommended eliminating the exemption in order
to "eliminate trade barrier labeling requirements." H.R. Rep. No.
1670, 91st Cong., 2nd Sess. (1970). We are, however, unsure what
weight, if any, to accord to the Department's position, given that the
Department did not expressly refer to the Dormant Commerce Clause and
given that Congress decided to exempt noncontiguous jurisdictions from
its prohibition on egg-labeling in spite of the Department's
objection. 

7

policy to insulate state legislation from Commerce Clause attack have

been 'expressly stated'"). We agree with the district court that

"[a]lthough the E.P.I.A. permits noncontiguous areas to impose a

labeling requirement, the statute does not permit such a requirement

to be imposed in a manner that discriminatorily burdens interstate

commerce."

III. Dormant Commerce Clause Analysis III. Dormant Commerce Clause Analysis

Having determined that section X(F) was not Congressionally

authorized in such a fashion as to exempt it from Dormant Commerce

Clause scrutiny altogether, we turn to the question whether section

X(F) violates the Clause. We must decide whether section X(F)

discriminates against interstate commerce by disproportionately

impairing out-of-state commerce, and, if so, whether Puerto Rico can

justify such discrimination. Trailer Marine, 977 F.2d at 10-12. 

A regulation that discriminates against interstate commerce may

be facially discriminatory or may be neutral on its face but

discriminatory in effect. Pike v. Bruce Church, Inc., 397 U.S. 137, 

142 (1970). Here, the Puerto Rico Department of Agriculture has

promulgated a regulation which imposes a burden on other United States

jurisdictions -- namely, egg-labeling -- that is not imposed on Puerto

Rico. The record amply supports the district court's finding that "if

enforced, [section] X(F) would impose on mainland and foreign egg

8

producers significant costs not imposed on Puerto Rican producers."4

Thus, section X(F) facially discriminates against interstate commerce.

Because section X(F) discriminates against interstate commerce,

the burden falls on appellants to show that it "serves a legitimate

local purpose" that could not be served "as well without

discriminating against interstate commerce." Hughes v. Oklahoma, 441 

U.S. 332, 336 (1979). Appellants argue that section X(F) serves a

legitimate state interest in protecting the health of Puerto Rican

consumers. They argue that imposing a labeling requirement on

imported eggs will enable authorities to remove from supermarkets eggs

produced in a geographic area known to be the source of an outbreak of

salmonella poisoning. However, appellants failed to support this

assertion with any evidence showing (1) whether there is a substantial

problem with salmonella in eggs; (2) whether egg-labeling is an

efficient way to trace contaminated eggs;5 (3) whether section X(F)
 

4The evidence produced below tended to show that section X(F)
would increase the market price of eggs imported into Puerto Rico from
other United States jurisdictions, to the advantage of locally-
produced eggs. For example, the Vice President of Radlo Brothers, a
company which exports eggs to Puerto Rico, testified that in order to
comply with section X(F) he would have to purchase new machinery for
each of his thirty-five locations from which he ships eggs to Puerto
Rico. He further testified that such egg-labeling would hinder his
ability to satisfy his other clients' emergency needs, because these
clients would likely not accept labeled eggs. 

5The utility of egg-labeling as a means of tracing contaminated
eggs is not self-evident. Testimony by the Vice President of United
Egg Producers described a process by which tainted eggs are traced
back to the farm that produced them through the standard documentation
already used by packers and producers.

9

was passed with the purpose of tracing contaminated eggs; and (4)

whether eggs imported from elsewhere in the United States are more

likely to be contaminated than eggs imported from other countries that

need only be labeled "foreign." We therefore accept the district

court's finding that appellants "did not offer evidence proving that

the discriminatory burden of [section] X(F) is justified by any factor

'unrelated to economic protectionism.'" See New Energy Co. v. 

Limbach, 486 U.S. 269, 274 (1988). We hold that section X(F) violates 

the Dormant Commerce Clause, and affirm the order of the district

court granting a permanent injunction against the enforcement of

section X(F).

So Ordered. So Ordered. 

10