## FERNDALE LABORATORIES, INC., Plaintiff–Appellee,

v.

Robert B. CAVENDISH, R.Ph., Paul F. Lamping, R.Ph., Amonte B. Littlejohn, R.Ph., Wayne C. Miller, R.Ph., Timothy D. Moore, R.Ph., Suzanne L. Neuber, R.Ph., Ruth A. Plant, R.Ph., Nicholas R. Repke, and Joseph R. Sabino, Jr., R.Ph., Members of the Ohio State Board of Pharmacy, Defendants–Appellants.

No. 94–4108.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1995.

Decided and Filed March 21, 1996.

Thomas A. Roach (argued and briefed), Lydia P. Loren, Bodman, Longley & Dahling, Ann Arbor, MI, for Plaintiff-Appellee.

Anne Berry Strait, Asst. Atty. Gen. (argued and briefed), Robert J. McClaren (briefed), Office of the Attorney General of Ohio, Columbus, OH, for Defendants-Appellants.

David C. Thollander, John F. Atkinson, and Dale J. Atkinson, Atkinson & Atkinson, Evanston, IL, for National Ass'ns of Boards of Pharmacy, Amicus Curiae.

Ray M. Aragon, Gary L. Yingling (briefed), McKenna & Cuneo, Washington, DC, for National Pharmaceutical Alliance, Amicus Curiae.

James N. Czaban (briefed), Bass & Ullman, New York City, for National Ass'n of Pharmaceutical Manufacturers, Amicus Curiae.

Before: LIVELY, KENNEDY, and RYAN, Circuit Judges.

LIVELY, Circuit Judge.

This appeal presents the question whether an Ohio statute that requires wholesale distributors of pharmaceuticals to register with and pay a license fee to the State of Ohio violates the Commerce Clause of the United States Constitution when applied to an out-of-state wholesale drug distributor. The district court held that the statute, as applied to a Michigan wholesale distributor, does violate the Commerce Clause, and entered an injunction against the state body charged with enforcing the statute.

## I.

### A.

The plaintiff, Ferndale Laboratories, Inc. (Ferndale), manufactures and distributes pharmaceuticals from its facilities in Michigan. It is licensed by the federal government and the State of Michigan as a manufacturer and wholesaler of prescription drugs. When the State of Ohio ordered one of Ferndale's Ohio customers to discontinue purchases from Ferndale until Ferndale registered under the statute in question, Ferndale applied for registration and paid the required fee ($100) under protest, then filed this action for declaratory and injunctive relief. The defendants are the members of the Ohio State Board of Pharmacy, the body that registers wholesale distributors of pharmaceuticals and other drugs, collects the registration fee, and administers the statute.

1. The term "dangerous drugs" as used in the statute includes, among others, any drug that "may be dispensed only upon a prescription."

### B.

The case was submitted to the district court on cross-motions for summary judgment, and the court granted summary judgment in favor of the plaintiff, Ferndale. Neither party contends that the case involves issues of material fact, or that the district court relied on erroneous factual findings. Accordingly, we adopt the district court's statement of the facts, as set forth in its unpublished opinion:

Plaintiff operates a wholesale pharmaceutical business based in Michigan whereby customers from across the country order prescription medications which are then shipped by plaintiff. Plaintiff's activities with regard to the State of Ohio include the distribution of samples to physicians and the sale of prescription drugs to wholesalers, hospitals, and some industrial entities. Plaintiff does not sell medication directly to consumers in Ohio. None of plaintiff's employees work in Ohio or travel to Ohio on plaintiff's behalf, nor does plaintiff own any tangible property in Ohio. Plaintiff is registered as a wholesale pharmaceutical distributor in Michigan and is therefore in compliance with Michigan and federal registration requirements. Defendant has not alleged that Michigan's regulations are substantially different from Ohio's.

Ohio Revised Code § 4729.51 provides, in pertinent part, that "[n]o person other than a registered wholesale distributor of dangerous drugs shall possess for sale, sell, distribute, or deliver, at wholesale, dangerous drugs."[1] The registration procedure is contained in Ohio Rev.Code § 4729.52. Section 4729.52 provides that out-of-state wholesalers may be licensed as well as in-state wholesalers. Since the adoption of Section 4729.51, the Board has required both in-state and out-of-state wholesale distributors to register and pay a registration fee. The record reflects that the fee charged is currently $100.00 per year. There is no allegation or evidence that there has ever been a disparity in the fee charged to resident as opposed to nonresident wholesale distributors.

Ohio Rev.Code Ann. § 4729.02(D). Ferndale distributes prescription drugs to customers in Ohio.

The instant case arose when plaintiff elected to not pay the Ohio registration fee. Subsequently, defendants determined that one of the plaintiff's customers was purchasing dangerous drugs from plaintiff, an unlicensed wholesaler. Section 4729.51(D) requires that terminal distributors of dangerous drugs purchase drugs only from wholesalers who register with the Board. This provision provides economic leverage for the Board to require out-of-state wholesalers to register in Ohio. After the Board ordered a terminal distributor to stop buying drugs from plaintiff because of plaintiff's refusal to register, plaintiff paid the registration fee under protest and instituted the present action.

## II.

### A.

The defendants make two arguments on appeal. First, the defendants contend that in enacting a statute specifically regulating the wholesale distribution of drugs in 1987, Congress delegated the responsibility for regulating the wholesale distribution of prescription drugs to the states. See the Prescription Drug Marketing Act of 1987 (the Act), Pub.L. No. 100–293, codified at 21 U.S.C. § 353 (1988). They rely particularly on 21 U.S.C. § 353(e)(2)(A), which provides:

No person may engage in the wholesale distribution in interstate commerce of drugs subject to subsection (b) of this section in a State unless such person is licensed by the State in accordance with the guidelines issued under subparagraph (B).

The defendants construe the words "unless such person is licensed by the State" to be a broad delegation to the states of the power to regulate the wholesale distribution of drugs along with the power to require compliance by such wholesalers with federal, state and local drug laws.

Second, the defendants argue that in addition to the general delegation under the Act, Ohio has authority to regulate out-of-state wholesalers of dangerous drugs under its traditional police powers. As an activity that affects the general welfare of Ohio inhabitants, regulating the importation of dangerous drugs into the State is among those activities most clearly within a state's police power, according to the defendants. They contend that because the Ohio statute treats in-state and out-of-state wholesalers evenhandedly and imposes only minimal burdens on interstate commerce when applied to out-of-state wholesale drug distributors, the statute passes constitutional muster.

### B.

Predictably, Ferndale disagrees with both of the defendants' positions. Ferndale maintains that while the language of the Act is not entirely clear in its reference to "engage in the wholesale distribution in interstate commerce of drugs ... in a State," the legislative history makes it clear that Congress did not delegate to the states the authority to license an out-of-state wholesaler whose only connection with a particular state is the shipment of pharmaceuticals to customers for resale within that state. Ferndale relies particularly on the statement in a Senate Report that the Act is

intended to ensure that any person or firm engaging in the wholesale distribution of pharmaceuticals to any person or firm for resale shall be licensed in the state in which it does business and that the state licensing requirements meet certain minimum standards. *The mere shipment of pharmaceuticals into a state would not trigger the requirement that the distributor be licensed in that state.* However, the operation of a facility from which a wholesaler makes shipments outside the state would trigger the licensing requirement with respect to the state in which the facility is located.

S.Rep. No. 100–303, 100th Cong.2d Sess. 7 (1988), reprinted in 1988 U.S.C.C.A.N. 57, 63 (emphasis added). Rather than delegating authority to the states, Ferndale argues, the Act guarantees that wholesale drug distributors who ship their products in interstate commerce will be governed by federally established minimum criteria. One of these criteria is that the distributor be licensed by "a state"—in Ferndale's case, Michigan, the state in which all of its facilities are located.

With regard to the defendants' second argument, Ferndale contends that the Ohio statute interferes excessively with interstate

commerce by attempting to regulate the storage and handling of its products as well as its record keeping. This is conduct that occurs entirely outside of Ohio, and according to Ferndale, is beyond the reach of the Ohio legislature. Finally, Ferndale asserts that the burdens which Ohio Revised Code Annotated § 4729 impose on interstate commerce substantially outweigh the local interest it is claimed to serve.

### III.

■ This case involves the "negative" or "dormant" Commerce Clause. The Constitution, in Article I, § 8, cl. 3, contains an express authorization for Congress to "regulate Commerce with foreign Nations, and among the several States. . . ." Although the Constitution is silent on the subject of protecting interstate commerce where Congress has not acted, the Supreme Court has long recognized that "the Commerce Clause is more than an affirmative grant of power, it has a negative sweep as well." *Quill Corp. v. North Dakota,* 504 U.S. 298, 309, 112 S.Ct. 1904, 1911, 119 L.Ed.2d 91 (1992) (citing *Gibbons v. Ogden,* 22 U.S. (9 Wheat) 1, 6 L.Ed. 23 (1824) (Johnson, J. concurring)). The negative Commerce Clause limits the power of the states "to erect barriers against interstate trade." *Lewis v. BT Investment Managers, Inc.,* 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980). Thus, we consider the issues in light of decisions that have discussed the limits of permissible state legislation that burdens or interferes with the free flow of interstate commerce. In doing so, we review the district court judgment de novo, both because it involved the interpretation of several statutes—questions of law—and because the court granted summary judgment to Ferndale.

### IV.

■ The defendants rely on provisions of the Prescription Drug Marketing Act of 1987 as a federal grant of authority to the states to regulate interstate distribution of prescription drugs. The Supreme Court has recognized the power of Congress to authorize state action that regulates interstate commerce, but has required an unambiguous showing of congressional intent. The Court discussed this subject recently in *Maine v. Taylor,* 477 U.S. 131, 138–39, 106 S.Ct. 2440, 2447–48, 91 L.Ed.2d 110 (1986):

> It is well established that Congress may authorize the States to engage in regulation that the Commerce Clause would otherwise forbid. See, *e.g., Southern Pacific Co. v. Arizona ex rel. Sullivan,* 325 U.S. 761, 769 [65 S.Ct. 1515, 1520–21, 89 L.Ed. 1915](1945). But because of the important role the Commerce Clause plays in protecting the free flow of interstate trade, this Court has exempted state statutes from the implied limitations of the Clause only when the congressional direction to do so has been "unmistakably clear." *South-Central Timber Development, Inc. v. Wunnicke,* 467 U.S. 82, 91 [104 S.Ct. 2237, 2238, 81 L.Ed.2d 71] (1984).

When the Act relied upon by the defendants is examined in its entirety, it becomes clear that the reference in § 353(e)(2)(A) to a wholesale distributor "in a state" being licensed "by the state" sets forth just one of several *federal* requirements. Another provision of the Act requires a person who engages in the distribution of drugs who is not an authorized distributor of record to provide each wholesale distributor a statement identifying each sale of the drug before the sale to the wholesale distributor. 21 U.S.C. § 353(e)(1). The same provision requires each manufacturer of drugs to maintain a current list of "such authorized distributors" at its corporate offices. Yet another subsection requires the Secretary of Health and Human Services to issue guidelines by regulations "establishing minimum standards, terms, and conditions for the licensing of persons to make wholesale distributions in interstate commerce of drugs" subject to the Act. 21 U.S.C. § 353(e)(2)(B). The guidelines must include "requirements for the storage and handling of such drugs and for the establishment and maintenance of records of the distributions of such drugs." 21 U.S.C. § 353(e)(2)(B).

■ The defendants also rely on various provisions of the guidelines promulgated by the Secretary, specifically 21 C.F.R. Part 205

(1993), as support for their position that the Act authorizes states to regulate interstate distribution of drugs. Part 205 sets forth guidelines for state licensing of wholesale prescription drug distribution. We do not find in these guidelines, when read in conjunction with the Act itself, an indication of congressional delegation of authority to the states to do anything other than to follow federal requirements in licensing wholesale distributors. We certainly do not discern an "unmistakably clear" congressional intent to authorize state actions that would violate the Commerce Clause absent such authority. We are in a position similar to that of the Supreme Court in *Lewis v. BT Investment Managers, Inc.*, 447 U.S. at 49, 100 S.Ct. at 2022, where the Court found nothing in the language or legislative history of the Bank Holding Company Act of 1956 to support a party's argument that the act in question "was intended to extend to the States new powers to regulate banking that they would not have possessed absent the federal legislation." Thus, in agreement with the district court, we reject the defendants' reliance on the 1987 Act as a ground for upholding the validity of § 4729.

## V.

■ We turn now to the second issue, whether Ohio Revised Code Annotated § 4729 represents a valid exercise of Ohio's police power in the absence of explicit congressional authorization. Although it concedes that states may enact laws affecting interstate commerce under their police powers when such statutes do not discriminate against out-of-state interests and when the legitimate local interests outweigh any burdens on interstate commerce, Ferndale makes three arguments in support of the District Court's holding that OHIO REV.CODE ANN. § 4729 violates the Commerce Clause.

### A.

Ferndale contends the Ohio statute is unconstitutional because it seeks to regulate conduct that occurs totally outside that State. The practical effect of the statute is that Ferndale must comply with the Ohio statute or lose its Ohio customers. According to Ferndale, the statute regulates its storage, handling and record keeping relating to drugs, all activities that occur in Michigan. The defendants respond that the Ohio statute does not regulate activities in Michigan. The State of Michigan, in licensing Ferndale and adhering to the minimum requirements of the federal regulations, does the regulating. The only thing that § 4729 adds to the federal requirements is a requirement that Ferndale maintain and provide to the State of Ohio records of drugs it ships into the state, specifically identifying its Ohio consignees. Federal regulations do not require wholesale distributors to provide this information, and Ohio asserts that it needs such information in order to protect its citizens and to enforce its criminal laws relating to unlawful possession and use of drugs.

Ferndale also contends that the statute is unconstitutional because Ferndale does not have a "substantial nexus" with Ohio. This argument derives from *Quill v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), a tax case in which the Supreme Court applied a four-part test for determining the validity of a state's attempt to tax activities of an out-of-state mail-order house. One of these tests requires a substantial nexus with the taxing state. *Id.* at 310–11, 112 S.Ct. at 1911–13. The defendants respond that *Quill* concerned only a state's attempt to extend its taxing power beyond its boundaries and that the decision has no application to cases not involving a state's attempt to collect taxes on interstate trade and commerce. Section 4729 is not a taxing statute, they say, given the modest amount of the fee required to be paid and the uses made of the fees collected.

Finally, Ferndale asserts that the burden imposed upon it by § 4729 substantially exceeds any benefits accruing to Ohio from its enactment and enforcement. The defendants insist in response that the burden on Ferndale is minimal when compared to the local benefits—the enhancement of Ohio's ability to effectively enforce its drug laws for the protection of the health and safety of its citizens.

## B.

■ Ferndale's first two arguments require little discussion. We do not believe the registration requirement of § 4729 regulates activities that occur entirely outside of Ohio. The Ohio statute specifically provides for such registration of a nonresident as a wholesale distributor where "the person possesses a current and valid wholesale distributor of dangerous drugs registration certificate or license issued by another state" with comparable qualifications to Ohio's. § 4729.52(B). Ferndale does not dispute that Michigan's requirements for storage, handling and record keeping comply with federal requirements and are comparable to those imposed by Ohio. Thus, Ferndale qualifies for Ohio licensing by complying with federal and Michigan requirements; Ohio imposes no additional requirements related to these activities. We do not construe § 4729 as an attempt by Ohio "to control conduct beyond the boundaries of the State." *Healy v. Beer Institute*, 491 U.S. 324, 336, 109 S.Ct. 2491, 2499, 105 L.Ed.2d 275 (1989).

■ We also agree with the defendants that *Quill* does not mandate a separate finding of a substantial nexus as a requirement for upholding a state statute that does not attempt to tax interstate transactions, but merely has an incidental impact on such trade. *Quill* involved a tax that directly burdened interstate commerce, and virtually every precedent relied upon by the Court in deciding *Quill* was concerned with attempts by states to tax interstate commerce directly. In contrast, § 4729 is a statute passed by Ohio under its police powers; it aims to protect Ohio's citizens from mislabeled or adulterated prescription drugs rather than simply trying to collect a tax.

The record discloses that the registration fee under § 4729 has always been the same for in-state and out-of-state wholesale drug distributors. Furthermore, it does not have the earmarks of a measure designed to line the State's coffers. The $100 fee provides the funding required to administer activities of the Board of Pharmacy. Ohio Rev.Code Ann. § 4729.05. Although paid into the general fund, the fees are credited to the occupational licensing and regulatory fund. See Ohio Rev.Code Ann. §§ 4729.65 and 4723.05. The modest amount of the fee, and the fact that it produces only about $100,000 per year for both new applications and renewals, convince us that the fee provision of § 4729 is not designed as a revenue-raising measure; rather, it is a reasonable charge to cover administrative costs. And, the fact that the fee imposed might exceed the administrative costs connected with the statute does not, alone, affect the validity of the statute. *Bourjois, Inc. v. Chapman*, 301 U.S. 183, 189, 57 S.Ct. 691, 695, 81 L.Ed. 1027 (1937). This is not a case where a state has attempted to tax interstate transactions; thus, Ferndale's reliance on *Quill* is misplaced.

## C.

We turn now to the third issue.

■ In the absence of specific congressional authorization, the Supreme Court follows a "two-tiered" approach in analyzing state economic regulation under the Commerce Clause:

> When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [the Supreme Court has] generally struck down the statute without further inquiry. See, *e.g., Philadelphia v. New Jersey*, 437 U.S. 617 [98 S.Ct. 2531, 57 L.Ed.2d 475] (1978); *Shafer v. Farmers. Grain Co.*, 268 U.S. 189 [45 S.Ct. 481, 69 L.Ed. 909] (1925); *Edgar v. MITE Corp.*, 457 U.S. 624, 640–43 [102 S.Ct. 2629, 2639–41, 73 L.Ed.2d 269] (1982)(plurality opinion). When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, [the Supreme Court has] examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 [90 S.Ct. 844, 847, 25 L.Ed.2d 174] (1970). In either situation the critical consideration is the overall effect of the statute on both local and interstate activity. See *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429,

440–41 [98 S.Ct. 787, 793–94, 54 L.Ed.2d 664] (1978).

*Brown–Forman Distillers Corp. v. New York State Liquor Authority,* 476 U.S. 573, 578–79, 106 S.Ct. 2080, 2083–84, 90 L.Ed.2d 552 (1986).

■ We have no trouble concluding that the first test should not be utilized in determining the validity of § 4729. The statute does not directly regulate or discriminate against interstate commerce, and its effect is not to favor in-state economic interests over out-of-state interests. The same registration requirement and the same fee apply to both sets of economic interests. On their face the statute's requirements are evenhanded, and Ferndale has not alleged that they are applied in a manner to favor in-state drug wholesalers over Ferndale or other out-of-state suppliers. The statute simply is not a protectionist measure.

■ The most succinct direction for applying the second test to a non-protectionist state law that incidentally affects interstate commerce is contained in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). Citing *Huron Cement Co. v. City of Detroit,* 362 U.S. 440, 443, 80 S.Ct. 813, 815–16, 4 L.Ed.2d 852 (1960), the *Pike* Court wrote:

> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such [interstate] commerce is clearly excessive in relation to the putative local benefits.

397 U.S. at 142, 90 S.Ct. at 847.

■ We believe § 4729 effectuates a very strong local public interest by providing information concerning the types and sources of prescription drugs entering Ohio. Prescription drugs can be and are abused and unlawfully distributed in Ohio and elsewhere. Ohio's interest in preventing such illegal drug transactions is manifest. We believe the information required to be disclosed by wholesale drug distributors who register with the Board is directly related to Ohio's protection of the health, safety and general welfare of its inhabitants. As the Supreme Court stated in *Maine v. Taylor:*

> As long as a State does not needlessly obstruct interstate trade or attempt to "place itself in a position of economic isolation," *Baldwin v. G.A.F. Seelig, Inc., 294* U.S. 511, 527 [55 S.Ct. 497, 502, 79 L.Ed. 1032] (1935), it retains broad regulatory authority to protect the health and safety of its citizens....

477 U.S. at 151, 106 S.Ct. at 2454. We discern no needless obstruction of interstate commerce in § 4729's requirements or application, as described by uncontroverted affidavits in the record, and it certainly does not place Ohio in a position of economic isolation.

The final question is whether the burden imposed by the statute on interstate commerce substantially outweighs the local interest. Considering first the local interest served, Ferndale and *amicus* The National Pharmaceutical Alliance argue earnestly that the requirements of § 4729 provide little or no benefit to Ohio other than the income the statute produces. We disagree. The State of Ohio has a legitimate interest in keeping track of prescription drugs entering the State. The licensing of out-of-state wholesalers, who may be required to provide particular shipment records upon request, is an obvious method of achieving this goal and one that has a relatively small impact on interstate trade.

With respect to the burden imposed by § 4729 on out-of-state wholesale distribution, we again find ourselves in disagreement with the district court and Ferndale. We do not consider the $100 fee a burden. Further, we have examined the application form that § 4729 requires wholesale drug distributors within and outside Ohio to complete in order to be registered. It consists of two letter-size pages. Page 1 asks for information about the applicant, such as the proper name under which the applicant does business, the location of the applicant's operation, the type of business entity under which the applicant operates and names of owners, partners or corporate officers. The answers to these questions should be readily available without an extensive search or study. Page 2 requires information about the type of opera-

tions carried on by the applicant. This information is conveyed by the applicant's checking boxes supplied on the form. Again, the answers to these questions should be readily available to anyone familiar with an applicant's business operations.

Registration does not require the applicant to change its business practices in any way. It only requires the applicant to comply with the provisions of § 4729, which are not onerous and which apply both to in-state and out-of-state distributors. We conclude that the burdens, if any, imposed upon Ferndale by § 4729 are not substantially in excess of the benefits that Ohio derives from knowing the source and the recipients of all prescription drugs being sent into Ohio by wholesale drug distributors. Contrary to Ferndale's contentions, we find the burden imposed upon interstate commerce by § 4729 to be incidental and minimal while the benefit to the State of Ohio is substantial. *Pike v. Bruce Church, Inc.*, 397 U.S. at 142, 90 S.Ct. at 847; *Bourjois v. Chapman*, 301 U.S. at 187–88, 57 S.Ct. at 695.

The judgment of the district court is **REVERSED.**