The Honorable Ted Thomas State Representative 900 S. Shackleford, Suite 300 Little Rock, Arkansas 72211-3848
Dear Representative Thomas:
This official Attorney General opinion is rendered in response to certain questions you have presented concerning the importation of liquid oil field waste into the State of Arkansas from another state.
You indicate that your questions arise out of the fact that a Louisiana corporation that is authorized to do business in Arkansas has filed applications with the Department of Pollution Control and Ecology and with the Arkansas Oil and Gas Commission seeking authority to drill and complete a salt water disposal well in Columbia County. The Louisiana corporation has incentive to transport oil field waste into Arkansas because of strict regulations in Louisiana. The citizens of Columbia County are concerned about the environmental impact.
Accordingly, you have presented the following questions:
 (1) Can a county quorum court enact an ordinance to prohibit the importation of liquid oil field waste into the county from another state for disposal in the county by injection into the subsurface strata?
 (2) Can a county quorum court levy a tax or tariff on such an operation with the proceeds going into an emergency" clean-up" fund?
 (3) Can a county quorum court otherwise regulate such an operation by imposing monitoring/reporting requirements, liability insurance requirements or other requirements related to the public health, safety, and welfare?
RESPONSE
Question 1 — Can a county quorum court enact an ordinance to prohibit theimportation of liquid oil field waste into the county from another statefor disposal in the county by injection into the subsurface strata?
It is my opinion that the answer to this question will require analysis of the ordinance in question, the extent to which the ordinance prohibits the importation, and the reasons for the prohibition. Because these are questions of fact as to which I do not possess all the relevant information, and because I have not been provided with a copy of the ordinance under consideration, I cannot opine definitively in response to this question. However, I will outline the parameters of the law that will ultimately govern the question.
Generally, ordinances that impact upon the flow of commerce between states are suspect under the Commerce Clause of the United States Constitution. See U.S. CONST., art. I, § 8, cl. 3. The U.S. Supreme Court recently gave the following summary of Commerce Clause analysis:
 [T]he first step in analyzing any law subject to judicial scrutiny under the negative Commerce Clause is to determine whether it "regulates evenhandedly with only `incidental' effects on interstate commerce, or discriminates against interstate commerce." Hughes, supra, at 336 [Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 810
(1976)]. See also Chemical Waste, 504 U.S., at 340-341 [Chemical Waste Management, Inc. v. Hunt, 504 U.S. 334 (1992)]. As we use the term here, "discrimination" simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. If a restriction on commerce is discriminatory, it is virtually per se invalid. Id., at 344, n. 6. See also Philadelphia v. New Jersey, 437 U.S. 617, 624 (1978). By contrast, nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).
Oregon Waste Sys., Inc. V. Dep. Of Envt'l Qual. Of Ore., 511 U.S. 93, 99
(1994). See also In Re Southeast Arkansas Landfill, Inc., 981 F.2d 372
(8th Cir. 1992).
This office has had several opportunities to consider state laws and county ordinances that could have had the effect of impacting upon the flow of waste materials between states. See, e.g., Ops. Att'y Gen. Nos.93-200, 89-214, 89-209, 89-180, 89-024. In those instances where the legislation in question flatly prohibited the importation of waste purely on the basis of its origin, this office has consistently opined that the legislation violated the Commerce Clause.[1] For example, Opinion No.89-180 analyzed the provisions of two Miller County ordinances dealing with the importation of solid waste into Miller County. One of the ordinances flatly prohibited the importation of waste from any source other than certain named counties. It also decreased to zero over a period of time the amount of solid waste that could be imported from the named counties. The basis for the difference in treatment of waste by those ordinances was the point of origin of the waste. Relying on Supreme Court decisions cited previously, this office opined that the ordinance violated the Commerce Clause. The opinion noted that the proponents of the ordinance had failed to demonstrate a legitimate legislative reason for treating foreign waste differently than in-county waste. The sole basis for the difference in treatment was the point of origin of the waste. This basis was found to be insufficient to survive a Commerce Clause challenge.
In Opinion No. 89-209, this office considered a similar ordinance of Yell County, which prohibited the importation of waste into Yell County from any other county. It was concluded that the ordinance violated the Commerce Clause, for the reasons stated in Opinion No. 89-180.
The question of whether environmental concerns constitute a legitimate basis for differential treatment of waste was addressed in Opinion No.89-024. That opinion analyzed a proposed state law that would have prohibited the importation of waste from any distance in excess of one hundred miles. The stated purpose of the bill was the alleviation of public health hazards, environmental pollution, and economic loss. Despite this legitimate-sounding purpose, the proposed law was found to violate the Commerce Clause, because there appeared to be no particular relation between waste transported from more than one hundred miles and increased health hazards, increased environmental pollution, or increased economic loss. That is, foreign waste did not appear to pose any greater dangers than local waste. The regulation was therefore not structured in such a way as to effectuate its purposes. In support of this conclusion, the opinion cited various federal cases in which the courts had reached similar conclusions. Particularly pertinent was City of Philadelphia v.New Jersey, 437 U.S. 617 (1978), which addressed a state law that prohibited the importation into New Jersey of all waste which originated outside the state. It was argued that the prohibition was legitimate because it was intended to protect the public health, safety, and welfare. The court rejected the argument, stating:
 Thus, it does not matter whether the ultimate aim of ch 363 [the legislation under consideration] is to reduce the waste disposal costs of New Jersey residents or to save remaining open lands from pollution, for we assume New Jersey has every right to protect its residents' pocketbooks as well as their environment. And it may be assumed as well that New Jersey may pursue those ends by slowing the flow of ALL waste into the State's remaining landfills, even though interstate commerce may incidentally be affected. But whatever New Jersey's ultimate purpose, it may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently. Both on its face and in its plain effect, ch 363 violates this principle of nondiscrimination.
437 U.S. at 626, 627.
The City of Philadelphia decision indicates that a flat prohibition of waste solely on the basis of its origin violates the Commerce Clause — even if the purpose of the prohibition is environmentally-related — because it sweeps too broadly.
Thus, if the county ordinance about which you have inquired prohibits only waste that originated outside the county, without demonstrating that such waste is more hazardous than waste that originated within the county, it will be in violation of the Commerce Clause.
Question 2 — Can a county quorum court levy a tax or tariff on such anoperation with the proceeds going into an emergency "clean-up" fund?
It is my opinion that cannot levy a tax or tariff only upon out of state transporters of waste.
In both Opinion No. 93-200 and Opinion No. 89-180, this office found that the imposition of a fee only upon certain foreign transporters of waste violated the Commerce Clause for the reasons stated in response to Question 1. If the sole basis for the imposition of the fee is the point of origin of the waste, the fee is constitutionally impermissible. More recently, the U.S. Supreme Court reached the same conclusion in OregonWaste Sys., Inc. V. Dep. Of Envt'l Qual. Of Ore., 511 U.S. 93 (1994), holding that a higher fee for the disposal of waste generated out-of-state than for the disposal of waste generated in-state violated the Commerce Clause. Accord, Chemical Waste Management, Inc. v. Hunt,504 U.S. 334 (1992).
It should be noted, however, that counties are authorized to levy taxes for certain purposes, and to charge fees for the provision of services.See A.C.A. §§ 14-14-801(10)(11); 14-174-103 -105. Whether the tax or tariff that you have described would fall within the purview of this authority is a question of fact that will depend upon the particular nature of the tax or tariff. If it does fall within the county's authority, it must be levied in a non-discriminatory manner and cannot be imposed solely upon the basis of the point of origin of the waste.
Question 3 — Can a county quorum court otherwise regulate such anoperation by imposing monitoring/reporting requirements, liabilityinsurance requirements or other requirements related to the publichealth, safety, and welfare?
It is my opinion that counties do have the authority to regulate activities that would impact upon the public health, safety, and welfare, see A.C.A. §§ 802, -803, -804, but that they cannot do so in a discriminatory manner or in a manner that violates the Commerce Clause. For the reasons stated in response to Question 1, all monitoring/reporting requirement, liability insurance requirements, and other requirements must be imposed evenhandedly, unless the county can demonstrate a legitimate reason that imposing different requirements on foreign transporters of waste would further the purpose of the ordinance more effectively than imposing the same requirements on all transporters. See Ops. Att'y Gen. Nos. 93-200; 89-072.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] An exception to these consistent conclusions can be found in Opinion No. 89-214, which involved a situation to which the "market participant" theory was applicable. The "market participant" theory holds that the strictures of the Commerce Clause do not apply in situations where the state is regulating access to a public facility rather than a private one. See Camps Newfoundland/Owattona v. Town of Harrison,
___ U.S. ___ (1997); Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 810
(1976). Because you have not indicated the nature of the facilities as to which the county would regulate access, I am unable to opine with regard to whether the "market participant" theory is applicable to the situation about which you have inquired.