**UNITED STATES of America, Appellant,**

v.

**George EARP, d/b/a, Earp's Wholesale Seafood, Defendant–Appellee.**

**United States of America, Appellant,**

v.

**Blackburn Brothers, Inc., Defendant–Appellee.**

**Nos. CRIM.3:01–470, CRIM.3:01–471.**

United States District Court, D. South Carolina, Columbia Division.

Dec. 8, 2003.

James Emory Smith, Jr., Tracey Colton Green, SC Attorney General's Office, Kenneth Paul Woodington, Davidson Morrison and Lindemann, Columbia, SC, for movant.

## ORDER AFFIRMING THE RULING OF THE MAGISTRATE JUDGE

ANDERSON, District Judge.

Defendant-appellee George Earp owns and operates two seafood distribution companies: Earp's Wholesale Seafood, of Raleigh, N.C., and Blackburn Brothers, Inc., of Carolina Beach, North Carolina. On May 15, 2000, pursuant to an anonymous tip, the South Carolina Department of Natural Resources ("SCDRN") stopped one of Earp's delivery trucks as it delivered white bass to Palmetto Seafood in Columbia, South Carolina. According to the defendant, the bass was legally purchased in Ohio.

The government filed a criminal information on April 26, 2001, charging the defendants with violating the Lacy Act, 16 U.S.C. § 3372, a federal statute that makes it a misdemeanor to import, export, or sell in interstate commerce any fish in violation of state law.[1] In this instance, the underlying state law is South Carolina Code § 50–13–1610, which makes it illegal to sell white bass.[2]

1. 16 U.S.C. § 3372(a)(2)(A) states, in pertinent part:

It is unlawful for any person to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State.

2. South Carolina Code § 50–13–1610 states in pertinent part:

It shall be unlawful, at any time, to sell, offer for sale, barter, traffic in or purchase

The defendants moved to dismiss, arguing that the state statute violated the Commerce Clause of the United States Constitution. The State of South Carolina thereafter moved to intervene and United States Magistrate Judge Bristow Marchant granted the motion to intervene on September 20, 2001. On October 1, 2001, Judge Marchant dismissed the information against both defendants, finding unconstitutional the state statute prohibiting the sale of white bass. The State and federal government[3] appealed.

On December 2, 2003, this court heard oral argument on the parties' objections to the Magistrate Judge's ruling.

## I. DISCUSSION

### A. Applicable Standard of Review

■ The government cites *United States v. Surgical Supply Corp.*, 989 F.2d 1390 (4th Cir.1993), in support of its argument that this court should review the Magistrate Judge's ruling de novo. The defendants cite *Maine v. Taylor*, 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986), in support of their argument that the applicable standard of review is the "clearly erroneous" standard. After reviewing both cases, it appears that the Magistrate Judge's factual determinations should be reviewed under the "clearly erroneous" standard and the Magistrate Judge's legal determinations should be reviewed de novo. *See Surgical Supply*, 989 F.2d at 1398 ("Because the Defendant's challenge is not to the existence of the facts contained in the indictment, but whether those facts demonstrate a failure timely to prosecute their cases, resolution of this issue turns on questions of law which are reviewed de novo.") (citing *Meekins v.*

*United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir.1991)); *Taylor*, 477 U.S. at 145, 106 S.Ct. 2440 (noting that "the 'clearly erroneous' standard of review has long been applied to nonguilt findings of fact by district courts in criminal cases") (citing *Campbell v. United States*, 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963); 2 C. Wright, Federal Practice and Procedure § 374 (2d ed.1982)).

### B. Commerce Clause Analysis

1. Does the State Statute Violate the Commerce Clause Directly or Indirectly?

■ In determining whether a state statute violates the Commerce Clause, the court must first determine if the statute affirmatively discriminates against interstate transactions or merely indirectly or incidentally burdens such transactions. If the statute indirectly burdens interstate commerce, it violates the Commerce Clause only if the burdens it imposes are clearly excessive in relation to the putative local benefits. *Maine v. Taylor*, 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986) (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970)). If the statute affirmatively discriminates against interstate commerce, the burden is on the state to show both that the statute serves a legitimate local purpose, and that this purpose could not be served as well by available non-discriminatory *Id. Id.* (citing *Hughes v. Oklahoma*, 441 U.S. 322, 336, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979)).

■ This court agrees with the Magistrate Judge's conclusion that the state statute in question here only indirectly

---

any game fish so classified under the provisions of Section 50–1–30, except as to freshwater trout as provided in Sections 50–13–1680 and 50–13–1470, regardless of where caught.

3. For simplicity's sake, hereinafter the State and federal government will be collectively referred to as "the government."

discriminates against interstate commerce. A plain reading of the statute indicates that it applies equally to all entities and individuals regardless of whether they are in the State or outside the State. The statute is a blanket ban that prohibits the sale of white bass regardless of where the fish were originally caught or purchased. In short, under this statute, no one is permitted to sell white bass in South Carolina. In addition, there is no evidence in the record to suggest the statute's purpose is discriminatory or that the statute affirmatively discriminates in its practical effect.

2. The *Pike* Analysis

■ Having determined that the statute is not facially discriminatory, the next two steps, based on the United States Supreme Court's analysis in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), are whether the statute serves a legitimate local purpose and, if so, whether alternative means could promote this local purpose as well as the current statute without discriminating against interstate commerce. *Id.* at 142, 90 S.Ct. 844. The defendants do not contest that the state statute serves a legitimate local purpose: preserving the State's population of white bass, a game fish. The real dispute in this case surrounds the second step of the *Pike* analysis: whether there are equally effective alternative means of preserving the white bass population that do not discriminate against interstate commerce.

As for whether there are less discriminatory means of preserving the white bass population, the defendants argue that a state law that prohibits the sale of only *native* white bass, would be just as effective as the current statute and less discriminatory. The defendants point to the state statute prohibiting the sale of *native* white perch as an example of such a statute.[4] The Magistrate Judge agreed with the defendants that this would be equally effective and less discriminatory.

The government argues that the Magistrate Judge should not have discounted the testimony of Dr. James Bulak, Director of Research for the Fresh Water Fisheries Section of the SCDNR. Dr. Bulak testified that white perch and white bass are not comparable game fish and that the robust white perch population is pushing out the white bass because the two types of fish compete for the same food. The government contends that this supports their argument that the current state statute regarding white perch is inappropriate as a model statute for white bass. While the two types of fish may be competing for the same food source, this court fails to see how this bears upon whether or not a ban on the purchase or sale of only native white bass would be less effective than the current total bass.

The government also argues that the Magistrate Judge should not have discounted Dr. Bulak's testimony that allowing the sale of white bass in South Carolina, even imported white bass, would create a black market for native white bass. The government fails to explain, however, and this court is left wondering, *how* the creation of a legal market in white bass would give rise to a black market in white bass.

The government also argues that Judge Marchant should not have discounted the

4. South Carolina Code § 50–13–1760(A) states, in pertinent part:

It is illegal to sell white perch (Marone Americans) caught in this State. Only those fish imported into the State from another state may be sold, and documentation which indicates the date of purchase and where the fish where purchased showing the origin and the number or poundage must accompany the transporting vehicle.

testimony of Lt. Jerry Walters of the SCDNR. Lt. Walters testified that nothing could protect South Carolina's white bass population as effectively as a total ban. However, as the defendants point out, Lt. Walters offered little evidentiary support for his conclusion. Lt. Walters also testified that the record-keeping requirements that white-bass merchants would be subject to in the event the State enacted a statute for white-bass similar to the statute for white-perch, would be too burdensome. However, the record reflects little evidence to support this conclusion as well. Furthermore, this point was explored at some length at the December 2, 2003 hearing on the government's objections and the government failed to provide an explanation for why the record-keeping requirements for a statute prohibiting the sale of only native white bass would be any more onerous than the ones enrrently in effect in regards to the sale of white perch. Accordingly, there is nothing in the record to indicate the Magistrate Judge's conclusion on this point was clearly erroneous.

In the end, this court agrees with the Magistrate Judge's ruling that a statute prohibiting the sale of *native* white bass would be just as effective as the current statute, if not more effective,[5] in terms of protecting the native white bass population.

## II. CONCLUSION

The Magistrate's decision on the ultimate question in this appeal, whether there are equally effective, less discriminatory means of preserving the white bass population in South Carolina, is not clearly erroneous in light of the evidence presented at the September 20, 2001 hearing. Accordingly, the Magistrate Judge's dismissal is affirmed.

**IT IS SO ORDERED.**

---

5. The defendants argue, and this court is inclined to agree, that a statute prohibiting the purchase or sale of *native* white bass would likely be more effective than the current statute in preserving the native white bass population. Under the current statute, the only legal means for South Carolinians to acquire white bass in South Carolina (catching native fish) depletes the native fish population. Were a statute enacted that prohibited the purchase or sale of only *native* white bass, South Carolinians interested in obtaining white bass could purchase foreign white bass shipped in from out of state.