HAMILTON, Circuit Judge,
dissenting in part.
I agree that the Illinois Constitution does not bar Chicago’s ordinance. On two points critical to the federal Commerce Clause claim, however, I view the law differently than my colleagues do, so I respectfully dissent regarding the federal claim.
First, the Supreme Court itself has not yet confined the balancing test under Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), as narrowly as my colleagues suggest. The majority writes that Pike balancing comes into play “only when the law discriminates against interstate commerce in practical application.” Ante at 502 (emphasis in original), citing National Paint & Coatings Ass’n v. City of Chicago, 45 F.3d 1124, 1131 (7th Cir. 1995). In Pike itself, however, the Court wrote that this balancing test applies where “the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental....” 397 U.S. at 142, 90 S.Ct. 844 (emphasis added). In such cases, and this is one, the law will be upheld “unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.” Id.
The majority tries to confine Pike balancing to cases of “discrimination,” but it can do so only by using a notion of “discrimination” so broad that it applies to “even-handed” legislation with “only incidental” effects on interstate commerce. The majority would apply Pike only when the challenged law gives “local firms any competitive advantage over those located elsewhere.” Ante at 502, quoting National Paint, 45 F.3d at 1131.
The Supreme Court’s more recent discussions of Pike, since we decided National Paint in 1995, are difficult to reconcile with this approach. For example, the Court has explained that federal courts “generally leave the courtroom door open to plaintiffs invoking the rule in Pike, that even nondiscriminatory burdens on commerce may be struck down on a showing that those burdens clearly outweigh the benefits of a state or local practice.” Department of Revenue of Kentucky v. Davis, 553 U.S. 328, 353, 128 S.Ct. 1801, 170 L.Ed.2d 685 (2008) (emphasis added); see also United Haulers Ass’n v. Oneida-Herkimer Solid Waste Mgmt. Auth., 550 U.S. 330, 346, 127 S.Ct. 1786, 167 L.Ed.2d 655 (2007) (plurality opinion of Roberts, C.J.) (“Under the Pike test, we will uphold a nondiscriminatory statute like this one ‘unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.’ ”) (emphasis added). Given these developments, we should no longer use National Paint to avoid Pike balancing in Commerce Clause cases like this one.
*505 I confess that I write this with some diffidence and a sense of irony. Pike balancing has been criticized harshly in courts and the academy, and I am among those who have suggested it should ultimately be abandoned. See CTS Corp. v. Dynamics Corp. of America, 481 U.S. 69, 95, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987) (opinion of Scalia, J.) (Pike balancing inquiry is “ill suited to the judicial function and should be undertaken rarely if at all”); Lebamoff Enterprises, Inc. v. Huskey, 666 F.3d 455, 468-69 (7th Cir. 2012) (Hamilton, J., concurring in the judgment) (endorsing criticism); Wiesmueller v. Kosobucki, 571 F.3d 699, 704 (7th Cir. 2009) (“The judiciary lacks the time and the knowledge to be able to strike a fine balance between the burden that a particular state regulation lays on interstate commerce and the benefit of that regulation to the state’s legitimate interests.”); Regan, The Supreme Court and State Protectionism: Making Sense of the Dormant Commerce Clause, 84 Mich. L. Rev. 1091, 1207-08 (1986) (introducing review of Supreme Court cases); see also Department of Revenue v. Davis, 553 U.S. at 353-56, 128 S.Ct. 1801 (describing difficulty in applying Pike to state law exempting in-state government bonds from state income tax, and deferring to Congress to make policy choice). For now, though, the Supreme Court has left Pike open as a potential path to challenge economic regulations that do not discriminate against interstate commerce but that have incidental and perhaps unintended effects on interstate commerce.
Second, the majority errs by applying a stringent version of Iqbal and Twombly to find that plaintiffs have not plausibly alleged sufficiently burdensome effects on interstate commerce. Ante at 503-04, citing Adams v. City of Indianapolis, 742 F.3d 720, 733 (7th Cir. 2014) (applying stringent pleading standard to affirm dismissal of Title VII claim of disparate racial impact). Plaintiffs’ complaint offers a plausible forecast of those effects, though. The operative complaint alleges that the ordinance prohibits out-of-state breeders from selling pets in Chicago except by direct sales to customers, who would have to visit the breeder to pick up the purchased pet or otherwise arrange for delivery. ¶ 72. Perhaps the effects would be like those for distant in-state breeders, but that would be an empirical question. The complaint also alleges that the ordinance wñl be counter-productive, depriving consumers of purebred puppies, depriving consumers of a regulated and accountable sources for such puppies, and leaving consumers with the only, practical alternative of going to less regulated and less accountable brokers and breeders on the internet and elsewhere. ¶ 74.
Those allegations might or might not be true, but they seem to me at least plausible. It’s easy to imagine that the Chicago ordinance will not actually reduce the demand for high-cost, pure-bred pets. Meeting that demand might well be much more difficult and expensive, with greater effects on out-of-state breeders and without obvious gain in terms of health and safety or humane treatment of animals. In addition, plaintiffs offer at least some allegations of a. discriminatory purpose, alleging that when the ordinance was enacted, the city clerk portrayed the ordinance as aligning Chicagoans against the interests of an out-of-state industry with its “powerbase in Iowa, Missouri and Indiana.” ¶ 66 & Ex. B.
To affirm dismissal on the pleadings, the majority relies further on National Paint, but there we addressed factual findings made after a trial. We wrote: “Pike may be impossible to apply without some factual inquiries (albeit limited as Clover Leaf Creamery requires).” National Paint, 45 F.3d at 1132. Plaintiffs lost in National Paint because they had offered no evi *506 dence of impacts on interstate commerce. Id.\ see also id. at 1134 (Rovner, J., concurring) (noting that district court may need to conduct evidentiary hearing or trial to test the actual benefits and burdens of legislation if there is an allegation of a disparate impact on interstate commerce); Baude v. Heath, 538 F.3d 608, 612 (7th Cir. 2008)(Pike “requires evidence”). I don’t know whether the plaintiffs in this case could ultimately meet the demands of the Pike balancing test. They should be permitted to try, though, particularly now that the ordinance has taken effect and evidence of actual effects should be available. I would reverse the dismissal for failure to state a claim and remand for further proceedings.